CARRIE KINGMAN

*v.*

JAMES G. HIGGINS *et al.*

*Filed at Springfield September 30, 1881.*

1. WITNESS—*of party suing as heir.* Parties suing to have a cloud upon their homestead removed, which they claim as heirs of their deceased father, are competent witnesses to testify in their own behalf as to circumstances and facts which occurred after the death of the father of the defendants, who also claim as heirs.

2. CHANCERY—*only proper evidence considered.* On the hearing of a bill in equity the court will consider only such evidence as is competent.

3. HOMESTEAD—*can be released only in the statutory mode.* The homestead right can be released or waived only by a writing to that effect by the householder, acknowledged as required by the statute, or by the surrender or abandonment of possession to a purchaser under a conveyance. It can not be waived by any parol declaration not carried into effect.

4. SAME—*sufficiency of proof of.* On the claim of a homestead by the minor children of a deceased person, the proof showed that the deceased occupied the premises up to the time of his death by residence thereon, that he was married, had children, and that he lived with them on the premises as the head of the family, and that the land was not of the value of $1000: *Held,* that the proof was clearly sufficient, and brought the case within every requirement of the statute.

5. SAME—*of minor heirs—how extinguished.* Where a homestead estate devolves upon the minor children of a deceased owner, it can be extinguished only by an order of court directing a release thereof.

6. SAME—*widow can not release after her abandonment.* After a widow has permanently abandoned the homestead of her deceased husband, and the

children of her husband by a former wife, taking her own infant child with her, she will have no interest in the estate of homestead to release, and any attempt on her part to do so will be void as to the minor step-children remaining upon the premises, and they will succeed to such estate.

7. SAME—*right of widow to abandon or release children's right.* The widow of a deceased householder being the natural guardian of her own infant child, may bind it by her abandonment or release of the homestead, but being under no obligation to support the minor children of her husband by a previous wife, and having no power or control over them, she has no power whatever to release or transfer their rights in the homestead.

8. PRACTICE—*evidence taken, good against a new party.* There is no error in admitting evidence already taken to be read in evidence on the hearing against one made a party after the same was taken. In such case, if the new party is denied the privilege of cross-examining the witness whose testimony had been taken, on a proper application, there would be error.

APPEAL from the Circuit Court of Cumberland county; the Hon. WILLIAM C. JONES, Judge, presiding.

This was a bill in chancery, filed by John G. Higgins in his lifetime, against Carrie Kingman, to set aside a sale of his homestead under execution, in which Carrie Kingman claims title.

The evidence in this case shows, that in 1875 a judgment was rendered against John G. Higgins, father of appellees, in favor of the Johnson estate, and that the indebtedness was for goods and merchandise, and not for anything preferred by the statute as a lien upon the homestead rights of the said John G. Higgins, or his widow or heirs. The evidence further shows, that John G. Higgins owned and lived upon, as a homestead, with his family, the lands in question, long prior to that time (1875), commencing about the year 1870, and so continued until his death, and that he died leaving Jennie Higgins, his second wife, and step-mother of the appellees, and Lou L. Higgins, a child of Jennie Higgins, and half sister of the appellees, all residing on the land as a homestead.

It further appeared, that from the date of the judgment up to the filing of the bill, and since, the premises were not worth

more than $1000, and that shortly after the death of John G. Higgins, his widow took Lou L. Higgins, her infant daughter, and permanently removed to her father's in a foreign county, abandoning the land and her step-children, the appellees. After the death of John G. Higgins, his children, William W. Higgins, Mary L. Higgins, John T. Higgins and Robert G. Higgins, by a former wife, became parties to the bill · as complainants. Afterwards, Jennie Higgins, the widow, and Lou L. Higgins, her infant child, were made defendants. Shortly before the hearing, Jennie Higgins, the widow, conveyed all her interest in the premises to Carrie Kingman, releasing any claim she had to the homestead. It also appeared that Carrie Kingman derived her title or claim under the sale under the judgment through her deceased father, Dudley K. Johnson, she being his only heir.

Messrs. DECIUS & EVERHART, for the appellant:

It is claimed that the estate of homestead at the death of the husband passes to the widow, and during her lifetime, under the statute of 1873, she had a right to dispose of it as she saw fit, no difference what.the hardship imposed upon the minors. Whatever estops her from claiming a homestead, estops the minor children. *Buck* v. *Conlogue,* 49 Ill. 391; *Shepard* v. *Brewer et al.* 65 id. 385; *Clubb et al.* v. *Wise,* 64 id. 160; *Wright et al.* v. *Dunning,* 46 id. 271; *McCormick et al.* v. *Kimmel,* 4 Bradw. 121.

The entire evidence taken and reported by the master is not admissible, because it was taken before Lou L. Higgins, a minor, was a party to the suit, before a guardian *ad litem* was appointed for her, and without notice to her or her guardian *ad litem* of the time or place of taking the same, which alone renders the evidence inadmissible, and to admit it was error. *Turner et al.* v. *Jenkins,* 79 Ill. 228.

The evidence was not sufficient to show a homestead. It failed to show the premises were occupied as such at the

date of the judgment, or that the judgment was not for improvements made on the land.

The decree was erroneous in finding a homestead only in favor of the complainants. It should also have found it in favor of their half sister, who was made a defendant.

The first and second errors assigned are in relation to the admission of evidence taken and reported by the master.

The appellants are both defending in this case, by reason of being heirs of deceased persons,—Carrie Kingman as heir of Dudley K. Johnson, deceased, through whom, as his only heir at law, she became vested with the title to the lands in controversy, and from the very nature of the case the original consideration is involved, for if given to secure the purchase money, or for improvements, etc., it would defeat a homestead right, and certainly appellees are not competent witnesses against her in their own behalf.

Mr. N. L. SCRANTON, for the appellees:

Lou L. Higgins, through the abandonment of the premises and her conveyance and release of the same afterwards to Carrie Kingman, by her mother, was not entitled to any standing in court, and this obviates the objection that evidence was used against her which was taken without notice to her.

The judgment, levy, sale and sheriff's deed are all since the death of Dudley K. Johnson, and therefore appellees were competent witnesses to these facts, as well as others transpiring after his death.

We admit that the father, as the head of the family, has the power to abandon the homestead for himself and family, and that the mother, when the head of a family, can also abandon the homestead and make such abandonment binding upon her children of the family, as decided by the authorities cited by counsel. We, however, assert the law to be, that as no *laches* of the father will conclude the rights of

homestead, so no *laches* of the mother will bar the rights of the children. *Hubbell et al.* v. *Canady*, 58 Ill. 428.

A release by her of her interest in the estate does not conclude even her children. *Miller* v. *Markle*, 27 Ill. 405.

Mr. Justice Walker delivered the opinion of the Court:

It is objected that the heirs of John G. Higgins, deceased, were not competent witnesses, and their evidence was improperly heard on the trial below. We are unable to appreciate the objection urged. It is true, they sue to have a cloud upon their homestead title removed, and they are heirs, and claim the homestead as heirs of their father; but all of the material portion of the evidence of those who testify relates to circumstances and facts which occurred after the death of their father. It is true, they state that their father occupied the premises as a homestead before and at the time of his death; but if this evidence were rejected, there is an abundance of other evidence to prove that fact beyond all cavil, and on a hearing on a bill in equity the court only considers such evidence as is competent. As to what they said in reference to the conversation between their father and the sheriff, that was wholly immaterial, as the homestead estate could not be released in that manner. The fourth section of the Exemption act provides that there shall be no release or waiver unless it be in writing, subscribed by the householder, etc., and acknowledged, or possession shall be abandoned or surrendered to a purchaser under a conveyance. There is not, nor can there be, the slightest pretence that Higgins, in his lifetime, did any of these acts, and without one of them there was no waiver of the homestead. This provision is so plain that it must have been overlooked, or such a defence would not have been urged in the court below.

It is next urged that the evidence fails to establish a homestead estate in Higgins in his lifetime, and consequently his children can claim none. The evidence abundantly shows

that he occupied the premises; that he was married, had children, and that he lived with them on the premises as the head of the family, and the land was not of the value of $1000. He died whilst living on the place, and had never abandoned it. It is difficult to perceive that a clearer case could be made. The proof seems to bring the case strictly within every requirement of the statute. A homestead estate is clearly made out in him.

The first section of the Exemption act creates the estate of homestead, and provides for its exemption from forced sale. The second section provides that the exemption shall continue after the death of the householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child becomes twenty-one years of age; and in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the premises as a resident. Thus, it is seen that the father or mother might occupy the premises exempt from levy and sale, and in case of their death or desertion it is continued to the children until the youngest shall attain the age of twenty-one years.

The fourth section provides the manner of extinguishing the estate of homestead. It enacts that the waiver shall, to be operative, be in writing, subscribed by the householder and his or her wife or husband, if he or she have one, and acknowledged, etc., or possession abandoned or given pursuant to the conveyance, "or if the exemption is continued to the children," no waiver or release shall be valid "without the order of the court directing a release thereof." Here the exemption was continued to the appellees as the children of deceased. The only means, therefore, by which their right can be extinguished is by order of court, and no such order has been made.

Although it was held in *White* v. *Plummer*, 96 Ill. 394, that a widow holding the entire estate of homestead which

had been set off to her, might release and transfer the estate to a third person, still she must be invested with and hold the estate when she makes the release. If she has previously lost the estate, by abandonment or otherwise, she has nothing to release. In this case the widow, soon after the death of her husband, abandoned the homestead, and went to her father's, in a foreign county, taking her own child with her, and she intended to abandon the homestead permanently, and has never returned to live upon the premises. The husband died in January, 1878. When the widow removed to her father's she left appellees in possession, and they have so remained ever since. The widow afterwards, on the 2d day of February, 1881, to release the homestead to Carrie Kingman, the purchaser under execution, quitclaimed the premises to her.

The question is then presented whether the widow had any interest in the estate of homestead to release. She had left, and continued absent for nearly two years, with the intention of permanently abandoning the homestead. This was, within the provisions of the second section of the act, an abandonment of the family, and by so doing, under the same section, the homestead estate devolved on and vested in the children of the deceased husband, who remained in possession. The right having vested in them, she having in law no power or control over the step-children, she did not have the slightest pretence of power to release or transfer their right therein. After it vested in the children their release could be had only by an order of a court of competent jurisdiction, as provided in the fourth section, and there is no pretence that there was any such order ever made requiring them to release their estate of homestead. Being the natural guardian of her own child she had its custody and control, and had the right to remove it permanently from the homestead, and thereby abandon all of its claim to the estate of homestead. She possessed that power to the same extent that the head of a

family may remove his family from and abandon the homestead.

It is urged that the court below erred in permitting the evidence taken in the case before Lou Higgins was made a party defendant to be read in evidence on the hearing. Had her guardian *ad litem* or solicitor desired, the witnesses could have been cross-examined; but no application or effort was made for the purpose. Had such a cross-examination been applied for and refused by the court, or had the cross-examination been made on notice to the other parties, and the court had excluded the evidence, there would have been error; but neither was done. In the case of *Bruner* v. *Battell*, 83 Ill. 317, the bill was taken as confessed, and proof was made before the master, and subsequently defendant was permitted to answer, and the evidence so taken was permitted to be read on the hearing, and it was held not to be error.

It is claimed that if complainants are entitled to the benefits of the Homestead act, the infant child, Lou Higgins, is also entitled to such an interest therein. In the cases of *Wright* v. *Dunning*, 46 Ill. 271, *Buck* v. *Conlogue*, 49 id. 391, *Clubb* v. *Wise*, 64 id. 157, *Shepard* v. *Brewer*, 65 id. 385, and *Brown* v. *Coon*, 36 id. 243, it was held that the homestead may be abandoned, and although the statute has preserved the right to the wife and children at the death of the husband, still, the children living under the control of the widow, when she abandons the property and takes the children with her, their right is gone. Hence in this case, the mother having the right to control her child, when she permanently removed to another county, taking the child with her, she and the child lost all homestead rights in the premises, and the court did not err in refusing to decree that this child had homestead rights.

The rights of complainants depend on a different principle. The law does not impose on the step-mother the duty of supporting them, nor does it give her a right to their custody.

In this case she abandoned both the premises and her husband's children, hence her acts did not, nor could they, affect their rights of homestead. The statute conferred the right upon them all alike, and it provides that the exemption shall continue in favor of the surviving husband or wife so long as he or she shall occupy the homestead, and of the children until the youngest child becomes twenty-one years of age. Here the step-children took, as against creditors, the same rights as did the widow, and her abandonment of the homestead did not affect their rights any more than had one of the complainants become of age or abandoned the homestead. The right is vested in the widow and children alike, each taking the same right, but that of the children being liable to the control of the parent having custody and control of them. Had the widow in this case died at the time she abandoned the homestead and her step-children, no one, we apprehend, would have doubted the right of the children to occupy the homestead as against creditors, and her abandonment of them and the homestead had precisely the same effect.

There was, therefore, no error in decreeing the sale void and setting it aside, and confirming complainants in their right of homestead, especially as they continuously occupied the homestead from their father's death.

The decree of the court below must be affirmed.

*Decree affirmed.*