WILLIAM R. LAGGER *et al.*

*v.*

MUTUAL UNION LOAN AND BUILDING ASSOCIATION OF CHICAGO.

*Filed at Ottawa March 31, 1893.*

1. SALE BY FIDUCIARY—*the fiduciary as a purchaser.* Trustees and others occupying fiduciary relations can not purchase on their own account, either directly or indirectly, the property entrusted to their management. This rule includes sales by administrators, who act in a fiduciary capacity in the sale of property and settlement of estates.

2. SAME — *rule applied to the husband or wife of the trustee.* The policy of the law which prohibits a person occupying a fiduciary relation from purchasing at his or her own sale of the trust property, equally forbids such purchase by the wife or husband of the seller. The exclusion of the husband as a purchaser when the wife sells as a trustee is not so much for the reason that she may be subsequently entitled to some interest in his lands, as on account of the unity which exists between them in the marriage relation.

3. SAME—*notice of incompetency of purchaser by recitals in the chain of title.* A party purchasing land, or taking a mortgage thereon for a loan, is bound to take notice of such recitals of fact as appear in the direct line of his title. So, where the proceedings in the probate court for the sale of land to pay debts show that the purchaser at the sale was the husband of the administratrix who made the sale, the recital of this relationship in the petition, and the deeds showing the transfer by the purchaser to a third person, and its immediate reconveyance to the administratrix herself, who makes the mortgage, are circumstances sufficient to put the mortgagee upon inquiry as to the legality of the sale by the administratrix and of the equitable rights of the heirs, and being chargeable with constructive notice of the real character of the sale made by the administratrix, he will not be entitled to foreclose his mortgage as against the interests of the heirs.

4. SAME—*administrator's sale—to a purchaser for the administratrix.* Where an administratrix sold land of her deceased husband to her second husband, for the purpose of raising money to pay her award, but no money was paid by the purchaser, and the amount of his bid was credited on the widow's award, and in a few days thereafter the administratrix and her husband conveyed the premises to a third person, who on the same day conveyed the premises back to the administratrix. no money being paid for any of the deeds, it was *held*, that the sale by the administratrix was voidable by the heir of the estate, and

that he might maintain a bill to have the sale and the several deeds set aside.

5. The law forbids an administrator to purchase at his own sale, whether the purchase is in his own name, or in the name of another for his use. In such case, even though the intentions of the trustee are honest and there is no fraud in fact, the sale will be set aside if the parties in interest object to it within a reasonable time. The sale in such case, however, is voidable, only, and not absolutely void.

6. SAME—*setting aside sale by administrator to himself—right to an accounting.* Where an administrator's sale is set aside on the ground it is in reality a sale to the administrator himself, on bill by the heirs, the administrator, as a trustee, will be entitled to have an account stated, and in stating such account he will be charged with the rents and profits received from the property, and credited with the moneys paid out on the purchase and applied to the discharge of debts against the estate, and with moneys paid out for taxes, necessary repairs, and reasonable or proper, lasting and valuable improvements.

7. SAME—*setting aside sale at the suit of heirs—allowance for support of children and for improvements.* Where an administratrix' sale of real estate was set aside on the ground the sale was to her own use, in adjusting her account the court properly set off the rents received by her, of $33 a month a part of the time and $45 a month after her making improvements thereon, for her expenses in looking after the property and in the support of her six minor children, at whose instance the sale was set aside, as it would be unjust to compel the mother to restore to the children the rents she had expended in their behalf.

8. An administratrix sold the homestead premises of her deceased husband, for the purpose of paying her award, to her second husband, who paid nothing, but bought for her use. She then borrowed $4200 on mortgage of the lands, which was expended in making improvements on the property, and thereby increased its value $2500. On setting the sale aside the court allowed the widow $1840, the sum due her on her award, and $2500, representing the enhanced value of the premises by reason of such improvements: *Held,* that the allowance to her of such sums was proper as against the heirs.

9. In this State, when the heirs come into a court of equity to set aside an administrator's sale made for his own use, the administrator will be allowed for reasonable and proper improvements made by him on the land. The reason of the rule is, he that seeks equity must do equity. If the heirs seek the aid of equity to establish their right to the property itself, and it appears that the estate has been substantially benefited by the improvement, it is just that they be required to make compensation. But no allowance for improvements can be made beyond the actual increase of the value of the land, as ascertained by its sale.

10. The court may, on setting aside a sale by an administratrix made to herself through another, charge the amount found to be equitably due her upon the property, or order a re-sale of it in order to realize such amount.

11. Ordinarily, if a subsequent purchaser makes improvements with a knowledge of a former purchase, he will be held to have done so in his own wrong. But the general rule is, that an allowance for reasonable improvements which are of a permanent character and of benefit to the estate, will be made to a purchaser who makes them in good faith and under the belief that he is the true owner. He will not always, however, be given credit for his improvements because his notice of the prior equities is constructive, only, and not actual.

12. SAME—*duty of parent to support minor children—allowance out of their estate.* The father is bound to support his minor children if he be of ability, even though they have property of their own; but this obligation, in such a case, does not extend to the mother, and the rule as to the father has become relaxed. When the father is without means to suitably maintain and educate his children, equity will make him an allowance out of their estate for that purpose.

13. SAME—*mortgage by administratrix after purchase of lands at her own sale—rights of mortgagee.* Where an administratrix becomes the purchaser of land at her own sale, made for the purpose of paying her widow's award, and she then mortgages the premises, and the sale is set aside at the instance of the heirs, her mortgage will not operate as an assignment of her claim against the estate for her award. We have held that a purchaser of land at a void administrator's sale is not entitled to be subrogated to the claims of creditors which have been paid by the purchase money. But as to the claim of the administratrix against the heirs for the enhanced value of the premises by improvements made with the money borrowed, which is secured by the mortgage, the mortgagee will be subrogated to the same, and may assert her claim against the heirs.

14. SAME—*and of the equitable estoppel of the administratrix.* In such case, when the mortgage of the administratrix contains the usual covenants of warranty, the doctrine of equitable estoppel will be applied, so as to prevent her from subjecting the premises to a sale for the payment of her award as against the mortgagee. If she should buy in the premises under a decree in her favor, the title so acquired would inure to the benefit of the mortgagee, under the covenants in the mortgage; and if a third person becomes the purchaser, the mortgagee will be entitled to the money paid, to the extent of her award.

15. MORTGAGE—*what title passes thereby—estoppel of mortgagor.* A mortgage in the statutory form, which contains the words "and warrants," is equivalent to a mortgage containing all the covenants of

warranty; and when such a mortgage is given, a title subsequently acquired by the mortgagor inures to the benefit of the mortgagee. An estoppel arises against the mortgagor out of the covenants of title, so that he can not deny his title or claim adversely to the mortgage.

16. HOMESTEAD—*setting aside sale of administratrix to herself—decree as to homestead and mortgage.* An administratrix became the purchaser, at her own sale, of premises left by her deceased husband, and which constituted the homestead of herself and her children, the sale being subject to the unassigned homestead rights. The sale was ordered for the payment of $1840, part of her widow's award. She and her second husband mortgaged the premises for $4200, releasing their homestead rights therein. This loan was used in making valuable improvements on the premises, before of the value of $2840, but which were thereby enhanced $2500. On bill by the mortgagee to foreclose, the children of the administratrix became parties, and filed a cross-bill to set aside the sale made by her, and the mortgage. The court set the administratrix' sale aside, but ordered the foreclosure of the mortgage, as against the mortgagors, for the sum due, and directed the sale of the premises, and the payment of $4340 of the proceeds to the mortgagee, as against the heirs: *Held,* that the decree was erroneous in not setting off a homestead to the heirs, or, in case of the sale of the whole lot, in not ordering the payment of the amount of the exemption to the persons entitled thereto, as provided in section 8 of the Homestead Exemption act, and also erroneous in not giving the heirs the option to save the premises from sale by the payment of the sum of $4340.

17. SAME—*alienation separate from the fee.* Where the homestead has not been set off or assigned, it is not such an interest in land as is alienable separately from the fee. So where the holder of the apparent legal title of land, the widow of the former owner, occupied by her and her children as their homestead, made a deed of trust on the premises, in which the homestead was released by her, and her title is set aside by the court, the release of the homestead will prove abortive, and will not be binding on her and the children, they continuing to occupy the premises.

18. Where a trust deed ceases to be operative for the reason that the grantor had no title, or his title is set aside at the suit of the true owner, the release of the homestead in the trust deed will also fail.

19. Where the fee is in the minor children, the waiver of the unassigned homestead by the surviving husband or wife in favor of a party to whom the fee is not transferred, will not estop the children from asserting their homestead right.

20. SAME—*release of homestead as to minor children—how effected.* Where the surviving wife, having the care and control of her children,

abandons the homestead and takes her children with her, her abandonment will work a loss of the homestead rights to them as well as to herself.

21. By the statute the homestead interest is continued for the joint and several benefit of the surviving husband or wife, and of the children after the death of the householder in whom the principal estate was vested. Such right is vested by law in such survivor and the children alike.

22. There must be an order of court to make the release of the homestead valid, as well when the children are occupying it jointly, as when they are occupying it alone. A release made by the surviving mother while she and her children are occupying the homestead together, is invalid without an order of court directing it to be made.

23. SAME—*section 3 of statute construed.* The latter clause of section 3, relating to exemptions, which provides that no release of the homestead shall be valid without an order of the court, if the exemption is continued to a child or children, does not refer exclusively to a case where such child or children occupy the homestead alone, and without the presence of either parent. The exemption is continued to the children as well when they occupy the homestead jointly with the surviving parent, as when they occupy it alone after the death or desertion of the surviving parent.

24. APPEALS AND WRITS OF ERROR — *errors not affecting one complaining.* A party, on appeal or writ of error, can not assign for error matters which do not in any manner affect his interest, but which affect the interest of one, only, who makes no complaint.

APPEAL from the Circuit Court of Cook county; the Hon. B. R. BURROUGHS, Judge, presiding.

The original bill in this case was filed in the Circuit Court of Cook County on July 31, 1890, by the appellee, The Mutual Union Loan and Building Association of Chicago, against Augusta M. Spies and John Spies, her husband, and Daniel Corkery, trustee, to foreclose a trust deed, dated October 15, 1888, executed by said Augusta M. and John Spies to said Corkery, as trustee, conveying lot 69 in Waller's subdivision, etc., in Cook County, (being a lot 25 feet front by 100 feet deep in Chicago, known as No. 71, 22d Place) for the purpose of securing their bond of the same date for the payment of $4200.00 to said Association. It appears that on July 1, 1889,

Augusta M. Spies obtained a divorce from her husband, John Spies, and was allowed to resume her former name, Augusta M. Lagger; that the said Augusta M. Lagger had intermarried with said Spies on April 7, 1888; that, at the time of said marriage, said Augusta was the widow of Joseph E. Lagger, deceased; that said Joseph E. Lagger died intestate on June 28, 1887, leaving him surviving his widow, the said Augusta, and six minor children, William R., Minnie M., Frank J., Joseph S., Lucy K., and Rosa P. Lagger, the oldest son, William, having been born September 24, 1867, and the oldest daughter on April 12, 1872; that, at the time of his death, the said Joseph E. Lagger was the owner in fee of said lot 69; that, when he died, said lot was free from liens and there were upon it a small brick house in front and a small frame cottage in the rear; that said premises were at the time of his death, and had been prior thereto, the homestead of said Lagger and his family, and, after his death, his widow and children continued and still continue to occupy the same as their homestead.

The original bill was amended by changing the name of Augusta M. Spies to Augusta M. Lagger; and the latter answered the bill, admitting the execution of the bond and trust deed. Upon their petition the said children were allowed to be made defendants; a guardian ad litem was appointed and answered for the minors, and said William R. and Minnie M., having become of age on November 28, 1890, filed their answer, alleging that they were strangers to the transactions between complainant and said Augusta, as set up in the bill, denying that said premises described in the trust deed were ever owned in fee by said Augusta, or that she had any estate therein except one of homestead, or that complainant was entitled to any relief, and charging that the children of Joseph E. Lagger, deceased, were the owners in fee, as tenants in common, of said premises by inheritance from their father, that said Augusta derived her pretended title thereto through

a sale by her as administratrix under certain proceedings in the Probate Court of suit County, but that said sale and proceedings were irregular and void as to said children.

The said children filed a cross-bill in the case against said Association and said Corkery and Augusta M. Lagger and John Spies, praying that said proceedings and sale be set aside, and that the deeds based thereon and said trust deed be set aside and declared to be void as against them and clouds upon their title.

The cross-bill was taken as confessed against Corkery and John and Augusta Spies. The Association answered it denying the material allegations, and alleging that the administratrix' sale was valid, and that Augusta M. Spies was the *bona fide* owner in fee of the premises when the trust deed was made; that its claim is for money expended for improvements upon the premises which have enhanced the value thereof; and denying that it knew of the matters and things alleged as to fraud against cross-complainants.

The decree of the Court below, after setting forth the death and heirship and the Probate Court proceedings, finds that the premises were sold on July 16, 1888, by the administratrix to her husband for an alleged consideration of $1650.00, subject to the dower and homestead rights of the widow, but that no consideration was paid by John Spies or Cora B. Hirtzel or said Augusta for the deeds so made to them; that said Augusta gave the estate of Joseph E. Lagger a receipt for $1650.00 which was credited on her widow's award; that the administratrix was the real purchaser at said sale; that no provision was made at said sale or by any order for setting aside to the children their homestead rights in the premises nor for the release of the same; that said Association, when it took the trust deed, had constructive notice that the land had been sold by the administratrix to her own husband, and upon inquiry would have learned that she was the purchaser at her own sale; that said premises when so sold were worth

19—146 ILL.

$2840.10 and that said Augusta and her children had an estate of homestead therein of the value of $1000.00; that almost all the money borrowed of said Association and secured by said bond and trust deed, was used in erecting a building on said premises whereby the same have been improved in value at least $2500.00; and it was thereupon ordered in said decree that said Augusta and John pay said Association $4777.30 with interest and costs, etc., within 30 days, and in default that said premises be sold by a master free of all liens by the parties to this proceeding, and that, out of the proceeds, the master pay the costs, next pay to said Association $4340.10 to be credited on the amount due to it as aforesaid from said Augusta and John, being the amount of the equitable interest of said Augusta in said premises, the balance to be paid to the cross-complainants in equal shares.

The present appeal is prosecuted by the said cross-complainants, the children of said Joseph E. Lagger, deceased, who assign errors. Cross-errors are assigned by the appellee, The Mutual Union Loan and Building Association.

Messrs. HOFHEIMER & ZEISLER, for the appellants:

Mrs. Lagger, at her administratrix' sale, sold the premises in question to her own husband. Such a sale is voidable at the election of the heirs-at-law, under the rule that a trustee can not become the purchaser at his own sale, nor can the husband or wife of the trustee become such purchaser. *Tyler* v. *Sanborn*, 128 Ill. 136; *Davone* v. *Fanning*, 2 Johns. Ch. 252; *Bassett* v. *Shoemaker*, 46 N. J. Eq. 538.

As to the right of the purchaser, on the failure of title, or when his title is set aside in equity, to recover for valuable and lasting improvements, see *Dart* v. *Hercules*, 57 Ill. 446; *Cable* v. *Ellis*, 120 id. 136; *Mathes* v. *Dobschuetz*, 72 id. 438; *Effinger* v. *Hall*, 81 Va. 94; *Holmes* v. *McGee*, 64 Miss. 129; *Ebelmesser* v. *Ebelmesser*, 99 Ill. 541.

No allowance should have been made to Mrs. Lagger for this reason. It is undisputed that the only claim for which the estate was sold was the widow's award, and that no money was paid at the sale. The claim of the children now is for rents and profits of the real estate due to them, and not to the estate of Joseph E. Lagger, while the claim of Mrs. Lagger for her award was against the estate. The two claims can not be set off against each other. *Coat* v. *Coat,* 63 Ill. 73.

The decree makes no provision for setting aside to the heirs of the homestead, or for paying to them, $1000 as the value of the same.

At law, a sale of homestead premises, without regard to the provision of the Homestead act, is held inoperative and void. *Hartwell* v. *McDonald,* 69 Ill. 293 ; *Leupold* v. *Krause,* 95 id. 440.

In equity, such a sale will not be held void, but the party entitled to the homestead will be required to accept $1000 for for his homestead. *Stevens* v. *Hollingsworth,* 74 Ill. 202 ; *Loomis* v. *Gerson,* 62 id. 11 ; *Leupold* v. *Krause,* 95 id. 440.

That the payment of $1000 to the parties entitled to the homestead has priority over all other charges against the land clearly appears from chap. 52, sec. 12, Starr & Curtis' Stat.

The decree in the case at bar seems to us clearly erroneous, for failing to provide that the value of the homestead be paid to appellants before any other claim is satisfied. It is also erroneous in failing to give appellants an option to save the land from sale.

Messrs. EASTMAN & SCHUMACHER, for the appellee :

The allowance for the improvements was proper. The authorities cited by appellants were cases where the value of the improvement was denied on account of actual fraud or bad faith shown by the one making the improvement.

The right of the administratrix, on an accounting between her and the heirs, has been passed upon by this court. *Kruse*

v. *Steffens,* 47 Ill. 112; *Ebelmesser* v. *Ebelmesser,* 99 id. 541; *Kinney* v. *Knoebel,* 51 id. 112; *Thorp* v. *McCullum,* 1 Gilm. 614; 2 Woerner on Administration, sec. 487.

We do not understand that it is the legal duty of a mother to support her children. (2 Kent's Com. 191.) In any event, she is entitled to one-third the rents and profits before the assignment of dower, and we are entitled to be subrogated to her rights in this particular. (2 Woerner on Administration, sec. 518, p. 1152, note 8, and cases there cited.) She is also entitled, and, in turn, the association, to be credited with the value of her dower interest in the premises. She is certainly estopped from claiming dower as against the association. Rorer on Judicial Sales, sec. 446.

The court finds the premises were worth $2841 before the improvements were erected thereon, — sufficient to pay the deficiency in the widow's award above the $1000 homestead exemption. When the property which she took in part payment of her award is turned back to the children, she still has a claim against the estate for this amount, which is a lien on this property, and it can be sold to satisfy the same. *Rector* v. *Reavill,* 3 Bradw. 232; *Lynch* v. *Hickey,* 13 id. 139.

This award is the first claim to be paid out of the estate after the funeral expenses. Rev. Stat. chap. 3, sec. 76.

This allowance is the same as the credits given the administrator in an accounting, for moneys paid by him on the purchase or in settlement of debts of the estate. The law seems to be conclusive, that where the administrator has relieved the estate of any burden, and the heirs have profited thereby, as a condition of equitable relief the heirs must reimburse the administrator. 2 Woerner on Administration, sec. 487, p. 1088; *Ebelmesser* v. *Ebelmesser,* 99 Ill. 541; *Kruse* v. *Steffens,* 47 id. 112; *Kinney* v. *Knoebel,* 51 id. 112.

That we should be subrogated to her rights in this particular there can be no question.

The decree finds that the appellants had, with their mother, an estate of homestead in the premises. The administratrix' sale passed the title subject to the homestead rights. *Watson* v. *Doyle,* 130 Ill. 415; *Hotchkiss* v. *Brooks,* 93 id. 386.

After the death of the husband the widow becomes the head of the family, and may abandon or release the homestead, and the children are governed by her action. *(Buck* v. *Conlogue,* 49 Ill. 391.) So, also, the Appellate Court says in *McCormack* v. *Kimmel,* 4 Bradw. 121: "We think it is the settled construction of our homestead exemption statute, that after the death of the husband the widow becomes the head of the family, and that she may abandon or release the homestead, and thereby produce the same results upon the rights of the children as though the release or abandonment had occurred while they were under the protection of the father." *Kingman* v. *Higgins,* 100 Ill. 319; *Shepard* v. *Brewer,* 65 id. 383; *Capek* v. *Cropik,* 129 id. 509; *Club* v. *Wise,* 64 id. 157.

The children have no homestead in these premises except with their mother, and she has waived and released all her rights to the same as far as the appellee is concerned, and is estopped from claiming the same.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The first question is as to the character of the title acquired by Augusta M. Spies through her sale as administratrix of the estate of her first husband, Joseph E. Lagger, deceased. Having married John Spies while she was administratrix of said estate, she applied to the Probate Court and obtained an order to sell the premises to pay debts. The only unpaid debt against the estate was her widow's award, appraised at $1959.00, upon which, after applying all the personal property, there was due a deficiency of $1840.10. The object of petitioning for a sale of the real estate was to raise money to pay herself this deficiency. At the sale made by her as ad-

ministratrix she struck off and sold the premises in question to her own husband, John Spies, for an alleged consideration of $1650.00. Although she reported the sale to the Probate Court as a sale for cash, yet, as matter of fact, her husband paid nothing. She merely credited the amount of his bid upon the amount due her upon her widow's award in her accounting as administratrix with the Probate Court. She executed a deed as administratrix to her husband on August 29, 1888, which was recorded on August 30, 1888. On September 5, 1888, she and her husband executed a deed of the property for a recited consideration of $1650.00 to Cora B. Hirtzel, which deed was recorded on September 11, 1888. Miss Hirtzel paid nothing for the property. She was a stenographer in the office of the attorney, who acted for Mrs. Spies in the Probate Court in filing the petition, and conducting the other proceedings. Under the direction of said attorney, Cora B. Hirtzel at once on the same day executed a deed of the property, conveying it back to Mrs. Spies, which latter deed was recorded on September 12, 1888. The latter deed, like the two others, was without consideration.

The evidence shows beyond question that John Spies acted for his wife in bidding for the property; that she was the purchaser of the premises at her own sale; that the petition for a sale, and the sale by her as administratrix, and the transfer of the title to a third person, and its reconveyance to her, were steps taken in pursuance of a previous arrangement between Mrs. Spies and her husband and her attorney, by which the title was to be vested in her, so that she could raise money to build upon and improve the property.

Trustees, and others occupying fiduciary relations, cannot purchase on their own account the property entrusted to their management. Administrators act in a fiduciary character in the sale of property and settlement of estates. The law forbids an administrator to purchase at his own sale, whether the purchase is in his own name, or in the name of another

for his use.  Even though, in such case, the intentions of the
trustee are honest and there is no fraud in fact, the sale will
be set aside, if the parties in interest object to it within a rea-
sonable time.  The purchase, however, is held to be voidable
only, and not absolutely void.  In a number of cases this
Court has sustained the right of the heir to file a bill in equity
to set aside a sale of land by the administrator where the lat-
ter has made the purchase for himself.  (*Thorp* v. *McCullum*,
1 Gilm. 614; *Miles* v. *Wheeler*, 43 Ill. 123; *Kruse* v. *Steffens*,
47 id. 112; *Ebelmesser* v. *Ebelmesser,* 99 id. 541).  It is man-
ifest, therefore, that the present appellants, who are the chil-
dren of Joseph E. Lagger, deceased, are entitled to have said
sale by their mother, and the deeds executed subsequently
thereto vesting the apparent title in her, set aside as between
themselves and the said Augusta M. Spies, or Augusta M.
Lagger.

The next question is whether or not the appellee, as the
holder of the trust deed executed by Augusta M. Spies and
her husband on October 15, 1888, can be regarded as a *bona
fide* purchaser without notice, so as to be entitled to enforce
said trust deed against the property in question.

When Mrs. Spies applied to the appellee for the loan secured
by the trust deed, she delivered to it for examination an ab-
stract of the title, which sets out all the proceedings in the
Probate Court in the matter of the estate of Joseph E. Lagger,
deceased, and all the deeds hereinbefore described. The peti-
tion of the administratrix for the sale of the property, as it
appears in the abstract, contains the statement that "petitioner
since her appointment as administratrix as aforesaid and on
or about April 7, 1888, intermarried with John Spies, with
whom she is living as his wife."  A party is bound to take no-
tice of such recitals of fact as appear in the direct line of his
title.  (*Brush* v. *Ware*, 15 Pet. 93; *Effinger* v. *Hall*, 81 Va. 94).
Here, the appellee was notified by the recorded proceedings
in the Probate Court, that the purchaser at the sale was the

husband of the administratrix who made the sale. The recital of this relationship in the petition, and the deeds showing the transfer of the title to a third person and its immediate reconveyance to the administratrix herself, were circumstances sufficient to put appellee upon such inquiry as would have resulted in the discovery of the equities of the appellants. The policy of the law, which prohibits a person occupying a fiduciary relation from purchasing at his or her own sale of the trust property, equally forbids such purchase by the wife or husband of the seller. (*Tyler* v. *Sanborn*, 128 Ill. 136). The exclusion of the husband as a purchaser, where the wife sells as a trustee, is not so much for the reason that she may subsequently become entitled to some interest in his lands, as on account of the unity which exists between them in the marriage relation. (*Bassett* v. *Shoemaker*, 46 N. J. Eq. Rep. 538). Hence, we think that the appellee must be held to have had constructive notice of the real character of the sale made by the administratrix, and that the trust deed cannot be foreclosed against the interests of the appellants in the property. (2 Woerner's Am. Law of Administration, sec. 487, p. 1086; *Filmore* v. *Reithman*, 6 Col. 120).

Where a sale made by an administrator to himself is set aside upon bill filed by the heirs for that purpose, it has been held in this State that the administrator is a trustee, and as such is entitled to have an account stated, and that, in stating the account, he should be charged with the rents and profits received from the property, and credited with monies paid out on the purchase and applied to the discharge of debts against the estate, and with monies paid out for taxes, necessary repairs and reasonable or "proper, lasting and valuable" improvements. (*Thorp* v. *McCullum, supra; Ebelmesser* v. *Ebelmesser, supra*). Whether or not the purchaser of land, whose purchase is set aside, can receive an allowance for the improvements made by him is a subject much discussed in the books. Ordinarily if a subsequent purchaser makes improvements

with knowledge of a former purchase, he will be held to have done so in his own wrong. (*Dart* v. *Hercules,* 57 Ill. 446). The general rule is, that an allowance for reasonable improvements, which are of a permanent character and of benefit to the estate, will be made to a purchaser who makes them in good faith and under the belief that he is the true owner. (*Cable* v. *Ellis,* 120 Ill. 136). In some cases it has been held that the allowance will be made where the sale is fraudulent in law, but free from the suspicion of intentional fraud. (*Filmore* v. *Reithman, supra*). The purchaser will not always, however, be given credit for his improvements because his notice of the prior equities is constructive only, and not actual. (*Effinger* v. *Hall, supra*). Whatever may be the reasons for granting or refusing the allowance for reasonable and proper improvements in other cases and under other circumstances, we have held that the allowance will be made to an administrator, under such a state of facts as is disclosed by the present record, where the heirs come into equity to set the sale aside; and the reason is that he who seeks equity must do equity. The rule, that the purchaser of a defective title is not entitled to compensation for improvements, is relaxed in favor of such purchaser when he is brought into a court of equity as a defendant at the suit of the real owner. If the latter seeks the aid of equity to establish his right to the property itself, and it appears that the estate has been substantially benefited by the improvement, it would seem to be just that he should be required to make compensation. (3 Pom. Eq. Jur. sec. 1241 and note; *Effinger* v. *Hall, supra; Ebelmesser* v. *Ebelmesser, supra;* 2 Woerner's Am. Law of Adm'n, sec. 487, page 1088; 2 Story's Eq. Jur. secs. 799 b, 1237, 1238). We have said, however, that "in no event can allowances for improvements be made beyond the actual increase of the value of the land as ascertained by its sale." (*Ebelmesser* v. *Ebelmesser, supra*).

In the case at bar, the evidence shows that nearly all the money borrowed by Mrs. Spies from the appellee, and for which the trust deed was given, was used in making improvements upon the lot. The money was paid out by the appellee to those constructing the improvements, as the work progressed. A part of the premises have always been occupied by Mrs. Spies or Mrs. Lagger and her children as a homestead. From the portion not so occupied she received rents to the amount of about $33.00 per month before the improvements were made, and about $45 per month after they were made. She used the rents collected "to keep up the property and support the children." In the accounting below the trial Court seems to have regarded the amounts, contributed by her to the support of the children and to taking care of the property, as an offset to the amounts with which she was chargeable for rents collected. The offset thus allowed was proper under the circumstances of this case. The amount of the rents was so small that they furnished but a meagre support. It would be unjust to compel the mother to restore to the appellants the rents which she thus expended in their behalf. The father is bound to support his minor children, if he be of ability, even though they have property of their own; but this obligation, in such a case, does not extend to the mother, and the rule as to the father has become relaxed. Where the father is without sufficient means to educate and maintain his children suitably to their condition and prospects, equity will make him an allowance out of their estates for that purpose. (*Bedford* v. *Bedford,* 136 Ill. 354; 2 Kent's Com. marg. page 191).

The court may, on setting aside the sale by the administrator, charge the amount found to be due to him upon the property, or order a resale of it in order to realize such amount. (*Thorp* v. *McCullum, supra; Ebelmesser* v. *Ebelmesser, supra*). In the present case, the court below ordered, that $4340.10 should be paid out of the proceeds of sale to the

appellee; or in other words, it found that the amount of the equitable interest of Mrs. Lagger in the premises, to which the Association was entitled, was $4340.10. This sum was made up of $1840.10, due to the widow upon her award, and $2500.00, representing the enhanced value of the premises by reason of such improvements.

We think that the sum of $2500.00 was properly fixed upon, under the evidence, as the amount of such increased value. Mrs. Lagger was entitled to a credit for that amount in an accounting between herself and her children under the authorities already referred to.

We cannot see that, in the accounting in the present case, the administratrix is entitled to any credit for paying debts against the estate. Although the land was sold to pay the widow's award, yet no money was actually paid, with which the widow's award was discharged. If the sale by the administratrix were allowed to stand, it might be said that the widow received the payment of her award by getting title to the land; but inasmuch as the sale of the land is set aside and the bid of $1650.00 was not paid in money, the widow receives neither land nor money. It follows that, upon the setting aside of the sale by the heirs, the claim of the widow against the estate for her award remains undischarged, and the land may be subjected to its payment. Here, a resale of the land is ordered, not merely to raise the amount of its enhanced value by reason of the improvements, but also to raise the amount due to the widow on her award. In making this resale a court of equity is doing what was originally attempted in the probate court. We, therefore, think that the court below properly fixed upon the full amount of the award, rather than the amount of the bid at the sale by the administratrix, as the amount to be realized upon the re-sale.

While, however, the sum of $4340.10 may be properly allowed as a credit to the mother in the accounting between herself and her children, the question arises whether the decree

was correct in directing this amount to be paid to appellee. The mortgage or trust deed executed by Mrs. Spies and her then husband, to the appellee Association, contains the words, "and warrants." It is in the statutory form, and is equivalent to a mortgage containing all the covenants of title. (1 Starr & Cur. Ann. Stat, page 575, chap. 30, sec. 11; *Elder* v. *Derby,* 98 Ill. 228). Where such a mortgage is given the title subsequently acquired by the mortgagor enures to the benefit of the mortgagee. (*Hitchcock* v. *Fortier,* 65 Ill. 239; *Bybee* v. *Hageman,* 66 id. 519; *Elder* v. *Derby, supra;* 1 Jones on Mtges. (4 ed.) sec. 68; *Todd* v. *Johnson,* 51 Iowa, 192). A mortgagor cannot set up against the mortgagee a prior mortgage executed by him to another as an outstanding title. (*Fisher* v. *Milmine,* 94 Ill. 328). An estoppel arises against the mortgagor out of the covenants of title contained in the mortgage, so that he cannot deny his title, or claim adversely to the mortgage. (15 Am. & Eng. Enc. of Law, pages 863, 864, and cases in notes).

It has been held in other States, that, where the mortgagee becomes the purchaser of the entire mortgaged premises at a void foreclosure sale and then sells and attempts to convey such premises, his deed operates as an assignment of the mortgage debt, as well as the mortgage securing the same, to the grantee in the deed. (*Jordan* v. *Sayre,* 29 Fla. 100, and cases cited). We are not prepared to apply this doctrine to the present case so far as to hold that—the administratrix having become the purchaser at her own sale made for the purpose of paying her widow's award and having then mortgaged the premises—her mortgage operates as an assignment to the mortgagee of her claim against the estate for her widow's award. This would be in effect a subrogation of appellee to the claim of the widow against the estate for her award; but we have held that a purchaser of land at a void administrator's sale is not entitled to be subrogated to the claims of creditors which have been paid by the purchase

money.   (*Bishop* v. *O'Connor,* 69 Ill. 431; *Chambers* v. *Jones,* 72 id. 275).

While it is true, however, that the appellee, as mortgagee, cannot be subrogated to the claim, which Mrs. Lagger, the mortgagor, has against the estate for her widow's award so as to be able itself to enforce that claim, yet we think that the doctrine of equitable estoppel ought to be applied so as to prevent her from subjecting the premises to sale for the payment of that award to herself as against appellee. (Herman's Estoppel and Res Adjudicata, vol. 2, secs. 661 and 895).   If she should buy in the premises under a decree in her favor for the sum of $4340.10 which includes the amount of her award, the title so acquired by her would enure to the benefit of appellee under the covenants in the mortgage.   If a third person should buy the premises for $4340.10 and pay the money into court, should she be allowed to receive the fund?   We think not.   The fund is realized from the land which she mortgaged, and when paid into court is a substitute for the land.   The court has before it all the parties interested, the mortgagor, the mortgagee, the heirs, the administratrix, and the widow as holder of the claim for widow's award, and it would be inequitable to pay over the fund in its hands—realized from the enforcement against the premises of the claims for widow's award and for improvements—to the mortgagor rather than to the mortgagee, in view of the covenants in the mortgage.   These considerations apply with greater force to that portion of the sum of $4340.10, which represents the enhanced value of the premises created by the improvements, towit: the sum of $2500.00; because the improvements were made with the money of the mortgagee; and the money secured by the mortgage was borrowed for the purpose of making the improvements.   In view of this fact, we think that the appellee is entitled to be subrogated to the claim of the widow for improvements.   For these reasons we

are of the opinion that the decree below was right in directing the $4340.10 to be paid to the appellee.

It is urged by counsel for appellants that the decree is erroneous in ordering the homestead to be sold free of the homestead rights of the widow and children. The decree finds that, at the time of the sale of the premises by the administratrix, they were worth $2840.10, and that at that time Mrs. Spies and her children had an estate of homestead therein of the value of $1000.00. No provision was made in the order of sale by the Probate Court for setting off the homestead, but they were sold subject to the homestead estate. At the time of Joseph E. Lagger's death his wife and children were occupying said premises as their homestead and have ever since continued to do so, and were so occupying them when the trust deed was executed and when the bill to foreclose the same was filed. The trust deed in the body of it contains a waiver and release of homestead rights, and the certificate of acknowledgment also contains such waiver and release. Have the homestead rights of Mrs. Lagger and of her children, who still occupy the premises with her, been lost as against the appellee by reason of the waiver in the trust deed executed by Mrs. Spies and her husband, John Spies?

At the time she executed the trust deed she held the apparent legal title by reason of the sale by the administratrix and the deeds to John Spies and to Hirtzel and to herself. The release of the homestead was incidental to a supposed conveyance of the fee. But in this suit her apparent legal title is set aside by the heirs, and the trust deed which is based upon it ceases to be operative as to them. When the trust deed was made, the homestead had not been set off. Where the homestead has not been set off or assigned, it is not such an interest in land as is alienable separately from the fee. (*Best* v. *Jenks,* 123 Ill. 447). It would seem to follow that the estate of homestead could not have passed to the trustee in the trust deed. Where the surviving wife, having the care and

control of her children, abandons the homestead and takes
her children with her, her abandonment works a loss of the
homestead rights to them as well as to herself. (*Kingman
v. Higgins,* 100 Ill. 319). Here, however there has been no
abandonment of the homestead by the mother and the minor
children, nor any possession given pursuant to the deed of
trust. Where the fee is in the children, the waiver of the
unassigned homestead by the surviving husband or wife in
favor of a party to whom the fee is not transferred does not
operate to estop the children from asserting their homestead
rights. Section 2 of the Homestead Exemption Act provides
that the "exemption shall continue after the death of such
householder for the benefit of the husband or wife surviving
so long as he or she continues to occupy such homestead and
of the children until the youngest child becomes twenty-one
years of age; and in case the husband or wife shall desert his
or her family, the exemption shall continue in favor of the one
occupying the premises as a resident." (1 Starr & Cur. Stat.
page 1101, chap. 52, sec. 2). Section 3 of the Act provides
that "no release, waiver or conveyance of the estate so ex-
empted shall be valid unless the same is in writing, subscribed
by said householder and his or her wife or husband if he or
she have one, and acknowledged, etc., or possession is aban-
doned or given pursuant to the conveyance; or, if the exemp-
tion is continued to a child or children, without the order of
the court directing a release thereof." (Idem, page 1103). In
construing these sections we have held that their object is "to
provide a home and shelter for the surviving husband or wife
*and for the minor children;*" that "the homestead interest is
continued for the joint and several benefit of the survivor and
of the children, after the death of the householder in whom
the principal estate was vested;" that "the right of home-
stead   *   *   *   is vested by law in the surviving husband
or wife and the children alike." (*Capek* v. *Kropik,* 129 Ill.
509). The latter clause of section 3, which provides that no

release of the homestead shall be valid without an order of the court if the exemption is continued to a child or children, does not refer exclusively to a case where such child or children occupy the homestead alone and without the presence of either parent. The exemption is continued to the children, as well when they occupy the homestead jointly with the surviving parent, as when they occupy it alone after the death or desertion of the surviving parent. It follows that there must be an order of court to make the release of the homestead valid as well when the children are occupying it jointly with the surviving parent, as when they are occupying it alone. In the present case the release was made while the surviving mother and the children were occupying the homestead together, and there was no order of court directing it to be made. We do not therefore regard it as operating as an estoppel against appellants. In *Kingman* v. *Higgins, supra,* the father died owning the premises and occupying them as a homestead and leaving children by a former wife, and also leaving a second wife and her infant child. The widow took her own child and went to her father's house, abandoning the homestead and leaving it in possession of her step children. It was held that she and her child lost the right of homestead, but that the other children retained it, and that their homestead could not be released without an order of court. But the case is not authority for the position that the release could have been made by the widow without an order of court if she and her child had remained with the other children, she and they jointly occupying the premises as a homestead.

We are therefore of the opinion that the decree in this case was erroneous in not setting off a homestead to the appellants, or, in case of the sale of the whole lot, in not ordering the payment of the amount of the exemption to the persons entitled thereto, as provided in section 8 of the Homestead Exemption Act. (1 Starr & Cur. Stat. page 1109, chap. 52, sec. 8).

The decree is also erroneous in not giving appellants the option to save the premises from sale by the payment of the $4340.10. They should have been allowed a reasonable time within which to pay the amount, and the sale should have been ordered to take place on their failure thus to pay. (*Ebelmesser* v. *Ebelmesser, supra.*)

It is claimed that Mrs. Lagger was ordered to pay more upon the mortgage debt than was actually due, and that the bill to foreclose was filed too soon as to her. These are matters which concern her alone, and they need not be considered as she has not joined in the appeal, nor assigned any errors in this Court. The amount due from the appellants upon the accounting is in no way dependent upon the amount owing by their mother upon the trust deed.

For these reasons the cause is reversed and remanded to the Circuit Court with directions to change or modify its decree in the respects herein indicated.

*Decree reversed.*