## Fielden M. Roberts, Administrator, v. Sue A. Weimer et al.

1. CONTRACT—*how viewed, where between parties holding confidential relations.* Where a contract has been entered into between parties between whom a confidential relation exists, the party claiming the benefit of the contract must show by clear and convincing proof that he acted with perfect good faith and that he did not abuse or betray the confidence reposed in him; otherwise the law will deem the transaction fraudulent.

2. ADMINISTRATOR—*when sale by, fraudulent.* A sale indirectly made by an administrator to a corporation in which he is largely

interested, is, in law, deemed fraudulent, and may be affirmed or disaffirmed at the option of the parties in interest.

Contested account of administrator. Appeal from the Circuit Court of Greene county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

H. C. WITHERS, for appellant.

FRANK A. WHITESIDE, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by the administrator from an order entered by the Circuit Court in the matter of the estate of Charles A. Weimer, deceased. The following facts are disclosed by the evidence: Charles A. Weimer died intestate on March 5, 1903, leaving him surviving his widow, Sue A. Weimer, a daughter, Edith, aged 17 years, and a son, Karl, aged 12 years, as his only heirs at law. At the time of his death he was engaged in the manufacture and sale at retail and wholesale of cigars and tobacco, and did an extensive business. On March 18, 1903, upon petition of the widow, appellant was appointed and duly qualified as administrator of said estate. At the same time he was appointed as guardian of Karl, and the widow was appointed as guardian of Edith. On March 23, 1903, appellant obtained an order from the County Court authorizing him to sell the business at private sale, and to continue the same until such sale might be effected. From thence forward until January 6, 1904, he operated the business, buying stock and manufacturing and selling goods. In the meantime he made no report of his acts and doings in the premises, either to the County Court, or the heirs. About January 6, 1904, appellant reported to the County Court that he had sold the business to the widow for $5,500, as of the date of March 23, 1903, and at the same time obtained an order author-

izing him to distribute to the widow and heirs the sum of $4,500.

A few days prior to this time he had organized a corporation called ":The C. A. Weimer Cigar Company," with a capital stock of $15,000, consisting of 150 shares of the par value of $100 each. The subscribers thereto, as reported to the secretary of state, were Sue A. Weimer, thirty shares, Fielden M. Roberts, fifty shares, Charles H. Eldred, thirty-five shares, and Jacob Graser, thirty-five shares.

On April 25, 1904, appellant filed his report in the County Court, in which he charged himself with the sum of $5,500, proceeds of the sale of the business, and took credit for the payment under order of court of the sum of $1,500 each to Sue A. Weimer, F. M. Roberts, as guardian of Karl Weimer, and Sue A. Weimer, as guardian of Edith Weimer, which report was approved by the court.

Appellant testified that of the fifty shares subscribed by him, fifteen were taken as guardian for Karl and the remainder for himself. Appellant and Graser each paid to the corporation on account of their subscriptions, $1,500, while Eldred, who was a brother-in-law of appellant, turned the shares subscribed by him over to appellant, who hypothecated the same to secure his personal note at a bank for $1,500. Prior to the complete organization of the corporation, appellant, Eldred and Graser had entered into a written agreement between themselves that payment for sixty of the total shares to be subscribed by them should not be called for by the directors, but that the same should be held by the corporation as "treasury stock."

At all subsequent meetings of the stockholders, they voted the full number of shares subscribed by them respectively and elected themselves directors. Eldred was elected treasurer, and appellant, who assumed entire management and control of the business of the corporation, was elected secretary, and was allowed and received a salary, the amount of which does not appear.

When Edith attained her majority, a settlement of
the guardianship accounts was effected, upon the sug-
gestion of appellant, by the transfer by the guardian
to Edith of fifteen shares of the stock in question at its
par value. In 1905 appellant presented to the County
Court his final report as administrator, to which the
widow and Edith each filed exceptions, alleging that
appellant had in his former report improperly taken
credit for the sum of $1,500 paid to Sue A. Weimer
and for a like amount paid to Sue A. Weimer as
guardian of Edith, whereas in fact said Sue A. Weimer
had never received individually or as guardian said
sums nor the value thereof in property of any kind or
value; that in said former report he had reported that
he had sold the assets inventoried at a private sale for
the alleged consideration of $5,500, when in fact said
assets were well worth more than $10,000; that said
pretended sale was a mere shift and device whereby
the property could be kept by said administrator for
his own use and benefit, through the instrumentality of
the corporation referred to, and that from the time he
took possession of the business until the purported
sale to the widow, he sold large quantities of the stock
of merchandise at private sale to various parties with-
out having ever reported the same to the court or ac-
counting therefor to the heirs; and praying that the
same administrator be required to properly account for
the proceeds of all merchandise so sold by him and
that he be charged therewith. Whereupon the County
Court entered an order finding that the alleged sale of
the business to the widow whereby the same might be
transferred to a corporation in which the adminis-
trator owned a majority of the stock, and of which he
was the managing officer, was contrary to law and not
binding upon the heirs unless they saw fit to ratify the
same; that the sums of money for which the adminis-
trator had taken credit in his former report, were
never in fact paid by him, but that on the contrary
he had induced the widow to accept in lieu thereof,

stock of the corporation at par value, while he and the other shareholders had paid less than fifty cents on the dollar for the shares taken by them, by means of which said exceptors were defrauded; that between the times when said administrator took possession of the business. and the purported sale of the same to the widow, he made purchases and sales of merchandise from which he realized a profit, and that he had failed to make report thereof. The administrator was therefore ordered to restate his said report and account, and upon the surrender to him of the certificates of stock held by them respectively, to surcharge himself with the amounts with which he had wrongfully taken credit in his former report; and also that he make report to the court of all merchandise purchased and sold by him from the date of his appointment until the alleged sale of the business; and further that said widow indorse in blank and deposit with the clerk of the court, the certificates of stock in question, to be delivered to the administrator upon his paying to the exceptors the sum of $1,500 each. Upon appeal by the administrator to the Circuit Court such order was affirmed.

The evidence further tends to show that the consent of the widow to the organization of the corporation, the purchase of the property in her name, and her consent to receive shares of stock in lieu of the shares of herself and Edith in the proceeds of the purported sale, were obtained through the representations of appellant that the property could not otherwise be disposed of and that the enterprise would be very profitable. It further appears that the business, when conducted by Weimer in his lifetime, was well established and profitable and that the stock of merchandise and fixtures, exclusive of the good-will of the business, was worth much more than the sum purported to have been paid therefor by the corporation, and, further, that while the business was being conducted by appellant

prior to the formation of the corporation, it was both prosperous and profitable.

The widow testified that up to the time of the hearing no dividends had ever been paid upon the stock held by her, and that when she frequently inquired of appellant as to the profits, he replied that it required all of the receipts to run the business. There is evidence tending to show that appellant received a sufficient salary from the corporation to warrant his giving up his former business and devoting his entire time and attention to that of the corporation, and that he had the entire and exclusive management and control of same by reason of his control of the majority of the stock.

Under these circumstances the court was warranted in finding that appellant had acquired interests in the trust property antagonistic to those of the widow and Edith, and that the acceptance of the stock by them did not preclude them from the relief sought by their exceptions.

The first contention urged by appellant, that the court erred in ordering him to surcharge himself with the sum of $3,000, with which he had credited himself in the former report, is entirely devoid of merit. Appellant, as administrator, held the personal property in trust for the heirs at law, and as such stood in a fiduciary relation to them which required him to act with scrupulous fidelity in his dealings with them regarding their interests in the estate. Furthermore, the evidence tends to show that he also occupied the relation of friend and confidential adviser to the widow and heirs, who reposed full confidence in him and, being incapable through lack of knowledge of business methods, relied upon him implicitly and in every instance acted upon his advice in matters pertaining to the handling of their interests in the estate. He therefore occupied a double fiduciary relation to them and could not, in equity, be permitted to deal with them or the property, upon his own account to his own advantage, or to acquire any adverse rights therein.

While it may be true, as contended by counsel for appellant, that no positive proof of fraud appears, such proof is not essential. Where a contract is entered into between parties between whom a confidential relation exists, the party claiming the benefit of the contract must show by clear and convincing proof that he acted with perfect good faith and did not abuse or betray the confidence reposed in him, otherwise the law will deem the transaction fraudulent. Thomas v. Whitney, 186 Ill. 225; Mayrand v. Mayrand, 194 Ill. 48.

The effect of the sale to the widow and the subsequent transfer to the corporation amounted but to a purchase by appellant of at least a two-third interest in the property. He had no right to deal, even honestly, with himself. Such purchase was constructively fraudulent, notwithstanding it was made indirectly. Coat v. Coat, 63 Ill. 73; Miles v. Wheeler, 43 Ill. 123; Ebelmesser v. Ebelmesser, 99 Ill. 541. It was not, however, absolutely void, but voidable only (Lagger v. Bldg. Assn., 146 Ill. 283), and the heirs had the option to affirm or disapprove the transaction. Williams v. Rhodes, 81 Ill. 571.

It is finally insisted by counsel for appellant that that part of the order which requires him to make report of his receipts and expenditures and proceeds of sale of merchandise, during the period from March 21, 1903, to January 6, 1904, is inequitable and unjust. That while it is true that he carried on the business, buying and selling and manufacturing during that period, the sale reported and approved by the County Court as of date March 23, 1903, was for $5,500, or near $1,000 above the appraisement thereof, and there is no provision in the order for any reduction of the appraised value, nor any provision for a resale of the original property; that on an accounting for that period a loss may have occurred and that if the court holds appellant chargeable, as his report shows, with sale of the property as of date March 23, 1903, appellee should offer to place appellant in the same position

he was before he invested his money in the corporation and that in justice and equity the administrator should not be chargeable for anything beyond what he received.

The evidence warrants the assumption that the sum for which the property was claimed to have been purchased by the corporation represented less than the actual value thereof on the date it was turned over to it.

Notwithstanding appellant reported a sale to the widow of the property had been made upon March 23, 1903, no transfer of the same was actually made until the corporation received it on January 6, 1904. It is admitted by appellant that, in the meantime, he did a large amount of business, his cash receipts amounting to nearly $12,000, and that he may have made some profits. We are unable to perceive upon what legal or equitable theory either he or the corporation can be entitled to any profits theretofore realized. If the sale to the widow was valid she was clearly entitled to the accrued profits to the time she sold to the corporation; if invalid, such profits inured to the benefit of the estate. Appellees have elected, as they had the right, to affirm the sale to the corporation. The sale to the widow, whenever made, was voidable. Appellees had the right to ignore it and have by their objections done so. It follows that the profits, if any, belong to the estate, and that appellant was properly ordered to render a full report and account of all his transactions so that the true state of the account might be ascertained. If it should appear that, upon a full accounting, losses instead of profits accrued, the question of appellant's liability therefor will become a matter of future consideration by the County Court.

The manner in which appellant as administrator and guardian disposed of the assets of the estate, the formation of the corporation and the manipulation of the stock by him so as to obtain full management thereof and absolute control of its affairs, was not

such conduct as would commend itself to a court in the exercise of its equitable jurisdiction. Even though appellant may have intended to and did act in the utmost good faith, the strict rule quoted, thrust upon him the burden of establishing clearly that he had done so. This he has failed to do to the satisfaction of the County Court and Circuit Court, who had the advantage of seeing the witnesses and hearing them testify.

Moreover, as has been said, appellant while acting as trustee acquired an interest in the trust property which was obviously antagonistic to that of the *cestui que trust,* which he cannot be permitted to retain although he may have acquired it with their consent at the time.

The decree of the Circuit Court being in accordance with the facts as found by it and the principles of equity applicable to the same, is affirmed.

*Affirmed.*