# GEORGE SCROGGS

## *v.*

# JOSEPH O. CUNNINGHAM *et al.*

1. CONTRACT—*as to partnership account, construed.* Where articles of partnership provided for an annual account to be taken, and the payment to each partner of his share of the net profits, and just before the expiration of the year a dissolution was agreed upon, in which it was stipulated, in writing, an account should be taken "between said parties, to include only moneys drawn by the parties since" the last preceding settlement, "as provided" in the articles of partnership: *Held,* that the subsequent agreement must be construed with the original articles, and when considered with them, required the account to include all of the individual accounts of each partner, whether for moneys received or drawn out, or for any other indebtedness to the firm.

2. CHANCERY PRACTICE—*re-referring to master on sustaining exceptions to his account.* Where the master states a partnership account, and an exception is sustained as to one item only, charged to one partner, it is not necessary to refer the case back to the master, but the court may find and state the account.

3. INTEREST—*on partnership account.* Where a partner agrees, in writing, to exhibit a partnership account on a certain day, and make settlement, and on that day refuses and withholds the books, he is properly chargeable with interest from such day on any balance found against him, on bill for an account, up to the date of the first decree.

Appeal from the Circuit Court of Champaign county; the Hon. J. C. Allen, Judge, presiding.

Mr. T. J. Smith, for the appellant.

Messrs. Cunningham & Webber, for the appellees.

Mr. Chief Justice Scott delivered the opinion of the Court:

Principally the controversy in this case arises upon that clause of the articles of dissolution of the copartnership that had previously existed between complainant and defendant which is as follows: "It is further agreed, that on or before the first day of July, 1872, as provided in a contract of partnership between said parties, an account shall be taken between said parties, to include only moneys drawn by the parties since July 1, 1871; and that whatever sums may have been drawn by either party more than he was entitled to draw under said contract, shall be paid to the firm, and be divided equally between the parties thereto."

On the one hand, it is contended the account to be taken had reference only to "moneys" drawn by the respective partners out of the firm since July 1, 1871; and on the other hand, that it includes all of the individual accounts of each partner, whether for moneys received or drawn out, or for any other indebtedness to the firm. The latter construction was adopted by the circuit court, and we are of opinion it is the correct one.

Our understanding of this paragraph in the articles of dissolution will be aided very much by reference to the original articles of partnership, to which reference is made. Accordingly, we observe that it was provided each partner, after payment of all expenses, was entitled to an equal share of the profits; that Flynn and Scroggs had the entire management of the partnership affairs, at a stipulated annual salary; and by the sixth article it was provided that "on the first day of July, 1871, and annually thereafter, so long as the firm shall continue, the said Flynn and Scroggs shall make a full exhibit of

the business of the preceding year, and pay over to each partner his share of the net proceeds of said business."

It is obvious that the account to be taken on the first day of July, 1872, was the annual account provided for in the article just quoted, otherwise that provision of the agreement we are considering, that requires the account to be taken "as provided in a contract of partnership between the said parties," is meaningless.   By the original contract of partnership, Flynn and Scroggs obligated themselves to render annual exhibits of the business of the firm, and pay over to each partner his share of the net profits.   How could this be done, unless they charged themselves with the full amounts of their respective individual account?   That was necessary to exhibit the net profits of the concern.

The articles of dissolution appear to have been signed on the 25th of June, 1872.   The time for rendering the annual account had not then arrived, and that is no doubt the reason why the account was not then taken, but postponed to a subsequent day, viz: the first day of July ensuing, the day named in the original partnership agreement.   All the personal property was disposed of by the agreement to dissolve the partnership, and it only remained to take the annual account, and the time for taking it was near at hand.   But how was the account to be taken?   Only one answer can be given, viz: "as provided in a contract of partnership between the said parties." That contemplated a full exhibit of the business of the firm, so that each partner should receive his just proportion of the net proceeds.   Construing this clause of the articles of dissolution in connection with the original contract of partnership, which we are compelled to do, because reference is expressly made to it, the construction contended for can not be maintained upon any principle of justice or fairness.   Although the most apt words may not have been used to express the intention of the parties, it is plain from the context, the account to be taken was the annual account, and that was not only to include all moneys drawn out of the firm by each partner, but any money received by such partner from any source, for the

benefit of the firm.   When the money obtained from any source belonging to the firm was charged to the partner receiving it, in his individual account, it was "money drawn by the parties" out of the firm, in the sense those terms are employed in the agreement.   Any other construction would do violence to the language used by the parties in making their contract, and work great injustice.

In making up the account the master charged Flynn with an item of $336.55.   An exception taken to the report in this particular, was by the court sustained.   Evidence taken clearly shows the original charge of that item in Flynn's account was a mistake.   It was made to force apparent balance on the book, and the evidence is uncontradicted that he did not receive the money, or any part of it.   A mistake of this kind ought never to be corrected except upon the most satisfactory evidence of the error in the first instance; but that testimony is found in this record, and it leaves no doubt whatever on the mind that Flynn never received any portion of it, and hence ought not to be charged with it.

On sustaining the exception to the master's report as to this one item, there was no necessity for again referring the cause to the master.   It was but a matter of calculation to adjust the accounts, and could be done with slight labor by the court.

Under the agreement the account ought to have been taken on the first day of July, 1872, and the amount found due paid to complainant; but defendant refused to render any account, or allow any access to the books of the firm.   It was his contract, in writing, to render the account and pay whatever amount should be found to be due,   Having failed to do so, under the decision in *Derby* v. *Gage*, 38 Ill. 27, there was no error in allowing complainant interest on the amount found due, from the time the account ought to have been taken up to the date of the decree.

Upon the whole record we are of opinion justice has been done, and the decree must be affirmed.

*Decree affirmed.*