## A. B. Dick Company v. Sherwood Letter File Company.

1. CONTRACTS—*Construction of the Phrase "Line of Goods."*—In a contract providing that for and in consideration, etc., the second party agrees to pay to the party of the first part, at the expiration of one year from the date hereof, a sum equal to ten per cent of the net aggregate sales of the line of goods above mentioned, hereafter sold by the party of the second part, their licensees, agent or agents, provided that such payment shall not in any event exceed the sum of one thousand dollars. *it was held,* the term "line of goods" as used in the contract, did not mean the specific articles in which the contracting party dealt in the same forms, but articles to serve the same purpose and adapted to the same uses.

**Memorandum.**—In chancery. Bill for an accounting. Appeal from the Superior Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1893. Reversed and remanded. Opinion filed February 1, 1894.

The opinion states the case.

APPELLANT'S BRIEF, JOHNSON & MORRILL AND D. J. SCHUYLER, ATTORNEYS.

If the defendant did not acquire under this contract the sole and exclusive right to manufacture the unpatented articles which were held by the court to have been conveyed to him by the terms thereof, then the consideration failed, and the complainant has no standing in equity, for the rea-

son that it could not convey to the defendant what it agreed to, and the contract is therefore an onerous and burdensome one, and one which a court of equity will not lend itself to enforce. Montgomery P. S. Y. Co. v. Street Stable Car Line (Ill.), 31 N. E. Rep. 437; Story's Equity Jurisdiction, Secs. 776 and 787; Bispham's Equity, Secs. 372, 374; Hamilton v. Harvey, 121 Ill. 469; Kimball v. Tooke, 70 Ill. 553; Stone v. Pratt, 25 Ill. 25; Fish v. Leser, 69 Ill. 394; Lear v. Chouteau, 23 Ill. 39; Harrison v. Lodge, 116 Ill. 279.

Nor will a court of equity enforce a contract or compel an accounting under a contract where there are no corresponding obligations, and the contract is so indefinite in its terms that it can not be specifically enforced. Marr v. Shaw, 541 Fed. Rep. 864; Wollensack v. Briggs, 20 Ill. App. 50; 119 Ill. 459; Shenandoah Valley v. Lewis, 76 Va. 833; Schneeling v. Kriesel, 45 Wis. 325; Nichols v. Williams, 22 N. J. Eq. 63; Colsen v. Thompson, 2. Wheat. 236; Los Angeles v. Phillips, 56 Cal. 539; Bowman v. Cunningham, 78 Ill. 48; Blanchard v. D., L. & M. Company, 31 Mich. 43; Watts v. Evans, 113 Ill. 186; Olmstead v. Abbott, 18 Atl. Rep. 315; Angel v. Simpson, 85 Ala. 53; Stout v. Weaver, 52 Wis. 748; Burnett v. Kullak, 76 Cal. 535.

T. H. SIMMONS, attorney for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.
On the 9th day of August, 1888, the appellant was in business in Chicago, and so. far as this record shows, only selling the Edison Mimeograph, a device for multiplying copies of manuscript. We infer that the principal market for that ingenious device was in business offices. The appellee was also in business in Chicago manufacturing and selling various articles of office and bank furniture. The parties made this agreement.

" This agreement made this 9th day of August, 1888, by and between the Sherwood Letter File Company, party of the first part, and the A. B. Dick Company, party of the second part, both parties being corporations organized and existing under the laws of the State of Illinois,

Witnesseth: Whereas, the said party of the first part is the owner of letters patent No. 368,498, dated August 16, 1887, No. 381,959, dated May 1, 1888, No. 382,623, dated May 8, 1888, and is also the owner of the application for letters patent No. 257,097, filed December 6, 1887, and is now engaged at Chicago, Illinois, in the manufacture and sale of the articles covered by the above mentioned letters patent and applications and other articles of office and bank furniture, and

Whereas, the said A. B. Dick Company desires to acquire the exclusive right to manufacture and sell all the articles now manufactured and sold by the party of the first part in and throughout the United States and territories.

Now, therefore, in consideration of the remuneration and reward hereinafter mentioned, the said party of the first part hereby agree to transfer and convey, and does by these presents hereby transfer and convey, to the said second party and its successors and assigns, the good will, and all the business hereinbefore mentioned, together with the sole and exclusive right and license to manufacture, and to grant to others the right to manufacture, all the articles covered by the above said letters patent and said application, and to sell and grant to others the right to sell said articles now owned or controlled by the said first party, together with any and all patents which may be obtained for improvement on same, or for office devices of a like character which may be intended to supersede the articles now being manufactured.

It is also further agreed that should any of the present members of the party of the first part contrive, invent or produce any new article or articles of manufacture during the life of this contract, it or they shall be submitted to the party of the second part for purchase or manufacture on a royalty basis, and the said party of the second part shall have the option of accepting such inventions or product at the same price which may be offered for the same by any other disinterested party.

It is also stipulated and agreed that the title to said let-

ters patent and application above mentioned, will be maintained and protected by the party of the first part.

That for and in consideration of the foregoing, the said second party agrees to pay to the said party of the first part at the expiration of one year from the date hereof, a sum equal to ten per cent of the net aggregate sales of the line of goods above mentioned, hereafter sold by the party of the second part, their licensees, agent or agents, provided that such payment shall not in any event exceed the sum of one thousand dollars; at the expiration of two years from the date hereof a sum equal to ten per cent of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of one thousand dollars; at the expiration of three years from the date hereof, a sum equal to ten per cent of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of two thousand dollars; at the expiration of four years from the date hereof, a sum equal to ten per cent of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of three thousand dollars; at the expiration of five years from the date thereof, a sum equal to ten per cent of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of four thousand dollars; and for all the time and up to the time of expiration of all the patents above mentioned, a sum equal to ten per cent of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of four thousand dollars per year; provided, always, that at any time after the expiration of two years from the date hereof, the said second party shall have the option and right to purchase of the said first party all the right, title and interest of the said first party in and to the business above mentioned, and all its letters patent and applications for patents mentioned herein, or patents or applications for patents on any improvements and patents and applications for patents on any and all of the articles manu-

factured, sold or controlled by it, at the time of such sale, which the said second party shall pay therefor and in full the sum of twenty thousand dollars as follows: Not less than fifty per cent of the amount in cash, with the option of paying the remainder in cash or at the expiration of one year from the date of such purchase.

Upon the payment of said sum or sums the said first party shall execute the necessary conveyances and assignments to transfer and convey the same to the party of the second part, its successors and assigns, and no further or other payments shall then be made, or thereafter be made to the said first party, and this contract shall terminate and end.

Witness our hands and seals on the day and date aforesaid.

SHERWOOD LETTER FILE CO.,

Attest:                                Per C. W. SHERWOOD, Pres.

A. B. SHERWOOD, Sec'y-Treas.

A. B. DICK COMPANY,

Attest:                                Per A. B. DICK, Pres.

GEO. J. BINGHAM, Sec'y."

The question now is whether the words "a sum equal to ten per cent of the net aggregate sales of the line of goods above mentioned" mean that per cent of all sales of office and bank furniture (exclusive of mimeographs) or something less.

The Circuit Court held that they did not mean all such sales of a device called the " Rival Solid Arch File " which the appellant had devised, constructed and sold for the same uses as a device called the " Sherwood Board Paper File," which the appellee had manufactured and sold before the contract, and which the appellant manufactured and sold for some two years after the contract; nor sales made by the appellant out of the United States and its territories. Of this ruling the appellee complains.

The appellant complains of the ruling by the court that the words quoted meant sales of other articles than such as were patented under the letters patent mentioned in the contract.

The situation of the parties at the time the contract was made was that the appellee was in the business of supplying "office and bank furniture," but only such as was for the convenient care of papers. The highest price of any article in which the appellee dealt was $180.

At the time of the contract, the appellee sold its stock on hand and tools to the appellant for $3,339.12.

The appellant was not in the same line of business—not a competitor in anything. It had a business, however, to which the business of the appellee could well be joined. The appellant bought everything that the appellee had with which to conduct business, as well as the good will of the business.

Had no patents or future inventions been alluded to in the contract, and the time of its expiration fixed at a date named, there would be nothing upon which to hang an argument that " the line of goods " did not mean all that class of " office and bank furniture " in which the appellee dealt. The introduction into the contract of provisions regarding patents and future inventions does not narrow the meaning of " line of goods." We are convinced that the court was right as far as it went, but that the appellee is entitled to more.

" Line of goods," as used in the contract, does not mean the specific articles in which appellee dealt, in the same forms, but articles to serve the same purposes, adapted to the same uses. And when sold by the appellant anywhere, it must pay the percentage. The example of the Supreme Court in Scroggs v. Cunningham, 81 Ill. 110, and its reasoning as well as its example in Heissler v. Stose, 131 Ill. 393, are authority for awarding interest to the appellee.

The decree of the Circuit Court for $6,354.72 in favor of the appellee is affirmed, but that part denying more is reversed and the cause remanded with directions to cause an account to be taken of the sales of the " Rival Solid Arch File" and include in another decree to be rendered the percentage on such sales, and also on sales made in countries other than the United States and territories, with interest on both

at the rate of five per cent per annum from the 22d day of April, 1893, the date of the master's report on which the present decree is based.

This direction does not give the appellee all the interest to which it is entitled. It might claim interest from the time the money was due under the contract. Heissler v. Stose, 131 Ill. 393; but there is no cross-error assigned that brings that question before us.

In respects not mentioned in these directions, the decree is affirmed and the appellee will recover its costs. Reversed and remanded.