## THE A. B. DICK COMPANY
### v.
## THE SHERWOOD LETTER FILE COMPANY.

*Filed at Ottawa June 15, 1895—Rehearing denied October 30, 1895.*

1. APPEALS AND ERRORS—*improper testimony not cause for reversal, in equity.*    The admission of incompetent testimony at the hearing of a bill in equity is no cause for reversal, provided the competent evidence in the record sustains the decree.

2. CONTRACTS—*construction—what is included in "the good will and all the business."*    A contract which, for an agreed royalty of ten per cent on future sales of a "line of goods" mentioned, transfers "the good will and all the business" of the first party, which business is recited in the preamble to be the manufacture and sale of certain patented articles "and other articles of office and bank furniture" "now manufactured and sold by the party of the first part," will be construed, in computing royalty, to cover both the patented articles and others dealt in similar thereto.

3. SAME—*general contract for royalties includes foreign business.* The preamble to a general and unlimited agreement conferring the right to manufacture and sell certain patented articles, to the effect that such articles are now manufactured and sold by the first party "throughout the United States and Territories," does not limit the promise to pay royalties to domestic business.

4. STIPULATION—*construction as to what is included.*    The stipulation of counsel in an action for an accounting that certain specified articles "are covered by" the interlocutory decree, and under it the complainant is entitled to an accounting on the same, does not, by implication, exclude from the account an article not mentioned in the list so specified.

5. INTEREST—*allowed on written contract, though not specified.*    Interest may be allowed, under the statute, upon the amounts found due on an accounting under a written contract for payment of a specified per cent of the amount of sales of certain articles, although there is no provision in the contract for the payment of interest.

CRAIG, C. J., dissenting.

*A. B. Dick Co.* v. *Sherwood Letter File Co.* 51 Ill. App. 342, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

In August, 1888, the A. B. Dick Company and the Sherwood Letter File Company were both going corporations organized under the laws of the State of Illinois and doing business in the city of Chicago. The former was dealing in Edison mimeographs,—a device for multiplying copies of manuscript; and the latter was engaged in the business of manufacturing and selling various articles and devices of office and bank furniture, such as letter file cabinets, paper files, etc. On the 9th day of the month above mentioned the two corporations entered into a written agreement, which, omitting the attesting clause and the signatures and seals, was as follows:

"This agreement, made this 9th day of August, 1888, by and between the Sherwood Letter File Company, party of the first part, and the A. B. Dick Company, party of the second part, both parties being corporations organized and existing under the laws of the State of Illinois:

"*Witnesseth:* Whereas, the said party of the first part is the owner of letters patent No. 368,498, dated August 16, 1887, No. 381,959, dated May 1, 1888, No. 382,623, dated May 8, 1888, and is also the owner of the application for letters patent No. 257,097, filed December 6, 1887, and is now engaged at Chicago, Illinois, in the manufacture and sale of the articles covered by the above mentioned letters patent and application and other articles of office and bank furniture; and whereas, the said A. B. Dick Company desires to acquire the exclusive right to manufacture and sell all the articles now manufactured and sold by the party of the first part in and throughout the United States and Territories:

"Now, therefore, in consideration of the remuneration and reward hereinafter mentioned, the said party of the first part hereby agrees to transfer and convey, and does by these presents hereby transfer and convey, to the said second party and its successors and assigns, the good will and all the business hereinbefore mentioned, together with the sole and exclusive right and license to manufac-

ture, and to grant to others the right to manufacture, all the articles covered by the above said letters patent and said application, and to sell and grant to others the right to sell said articles now owned or controlled by said first party, together with any and all patents which may be obtained for improvement on same, or for office devices of a like character which may be intended to supersede the articles now being manufactured. It is also further agreed, that should any of the present members of the party of the first part contrive, invent or produce any new article or articles of manufacture during the life of this contract, it or they shall be submitted to the party of the second part for purchase or manufacture on a royalty basis, and the said party of the second part shall have the option of accepting such inventions or product at the same price which may be offered for the same by any other disinterested party. It is also stipulated and agreed that the title to said letters patent and application above mentioned will be maintained and protected by the party of the first part.

"That for and in consideration of the foregoing, the said second party agrees to pay to the said party of the first part, at the expiration of one year from the date hereof, a sum equal to ten per cent (10%) of the net aggregate sales of the line of goods above mentioned, hereafter sold by the party of the second part, their licensees, agent or agents, provided that such payment shall not, in any event, exceed the sum of one thousand (1000) dollars; at the expiration of two years from the date hereof, a sum equal to ten per cent (10%) of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of one thousand (1000) dollars; at the expiration of three years from the date hereof, a sum equal to ten per cent (10%) of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of two thousand (2000) dollars; at the expiration

of four years from the date hereof, a sum equal to ten per cent (10%) of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of three thousand (3000) dollars; at the expiration of five years from the date hereof, a sum equal to ten per cent (10%) of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of four thousand (4000) dollars; and for all the time and up to the time of expiration of all the patents above mentioned, a sum equal to ten per cent (10%) of the net aggregate sales for the year immediately preceding, provided that such payment shall not, in any event, exceed the sum of four thousand (4000) dollars per year: *Provided, always,* that at any time after the expiration of two years from the date hereof the said second party shall have the option and right to purchase of the said first party all the right, title and interest of the said first party in and to the business above mentioned, and all its letters patent and applications for patents mentioned herein, and patents or applications for patents on any improvements, and patents or applications for patents on any and all of the articles manufactured, sold or controlled by it at the time of such sale, which the said second party shall pay therefor, and in full, the sum of twenty thousand (20,000) dollars, as follows: Not less than fifty per cent (50%) of the amount in cash, with the option of paying the remainder in cash or at the expiration of one year from the date of such purchase. Upon the payment of said sum or sums the said first party shall execute the necessary conveyances and assignments to transfer and convey the same to the party of the second part, its successors and assigns, and no further or other payments shall then be made or thereafter be made to the said first party, and this contract shall terminate and end."

Upon the execution of the contract the A. B. Dick Company purchased all the tools, stock in trade and manufac-

tured articles of the Sherwood Letter File Company, and paid therefor the sum of $3339.12, and entered upon the performance of the contract.   The Sherwood Letter File Company ceased to do business.   Thereafter a difference arose between the parties in relation to what articles were embraced in the contract, and upon which a sum equal to ten per cent of the net aggregate sales was to be paid. The Letter File Company filed in the circuit court of Cook county a bill for an accounting, and subsequently several supplemental bills.   Issues were formed thereon, and upon a hearing an interlocutory decree was entered requiring the A. B. Dick Company to account to the complainant for all the sales of all and every the articles, both patented and unpatented, that appear by the large catalogue of the complainant, introduced in evidence, to have been a part of the business of the complainant sold by the agreement to the A. B. Dick Company, the sales accounted for to include the sales of all articles substantially like the articles appearing by said catalogue to have belonged to the business so sold, the change of name of any articles not to relieve the defendant from accounting for the sales thereof, provided such articles were used for the same purpose, and by said interlocutory decree the cause was referred to a master in chancery to take and state the account.   Thereafter such proceedings were had in the court as that a decree was rendered in favor of the Sherwood Letter File Company and against the A. B. Dick Company for $6354.74, together with interest thereon at the rate of five per cent per annum from April 22, 1893, the date of the master's report, to the date of the entry of the decree, said interest amounting to $59.13, said $6354.74 and said $59.13 making a total of $6413.87.   The decree was also against the defendant for costs, and it also awarded execution.   The cause was then appealed to the Appellate Court for the First District, where both errors and cross-errors were assigned. There the money decree in favor of the Sherwood Letter

File Company and against the A. B. Dick Company was affirmed, but the decree was in part reversed on the cross-errors, and the cause remanded, with directions to cause an account to be taken of the sales of the "Rival Solid Arch File," and include in another decree to be rendered the percentage on such sales, and also on sales made in countries other than the United States and Territories, with interest on both at the rate of five per cent per annum.

JOHNSON & MORRILL, and D. J. SCHUYLER, for appellant :

Where parties, by their own acts and conduct, have given construction to a contract, such construction will be followed by the courts, in the absence of a more equitable and reasonable one.  *Topliff* v. *Topliff*, 122 U. S. 131; *Chicago* v. *Sheldon*, 9 Wall. 54.

If the defendant did not acquire, under this contract, the sole and exclusive right to manufacture the unpatented articles which were held by the court to have been conveyed to him by the terms thereof, then the consideration failed, and the complainant has no standing in equity.  *Montgomery Stock Car Co.* v. *Stable Car Line*, 142 Ill. 315; Story's Eq. Jur. secs. 776, 787; Bispham's Eq. secs. 372, 374; *Hamilton* v. *Harvey*, 121 Ill. 469; *Kimball* v. *Tooke*, 70 id. 553; *Stone* v. *Pratt*, 25 id. 25 ; *Fish* v. *Leser*, 69 id. 394; *Lear* v. *Chouteau*, 23 id. 39; *Harrison* v. *Lodge*, 116 id. 279.

Nor will a court of equity enforce a contract or compel an accounting under a contract where there are no corresponding obligations, and the contract is so indefinite in its terms that it cannot be specifically enforced.  *Wollensak* v. *Briggs*, 119 Ill. 459; *Shenandoah Valley* v. *Lewis*, 76 Va. 833; *Schneeling* v. *Kriesel*, 45 Wis. 325; *Nichols* v. *Williams*, 22 N. J. Eq. 63; *Colsen* v. *Thompson*, 2 Wheat. 236; *Los Angeles* v. *Phillips*, 56 Cal. 539 ; *Bowman* v. *Cunningham*, 78 Ill. 48; *Blanchard* v. *L. & M. Co.* 31 Mich. 43; *Watt* v. *Evans*, 113 Ill. 186; *Angel* v. *Simpson*, 85 Ala. 53; *Stout* v. *Weaver*, 52 Wis. 748; *Burnett* v. *Kullak*, 76 Cal. 535.

The court cannot make a new contract for the parties, or engraft upon or inject into it terms and conditions not contemplated by the parties at the time when the contract was entered into. *Shirley* v. *Spencer*, 4 Gilm. 583; *Fitzgerald* v. *Staples*, 88 Ill. 234; *Robinson* v. *Stow*, 39 id. 568.

If the contract was susceptible of two constructions, then the construction should have been the one most favorable to the defendant, instead of a sweeping interpretation in favor of the complainant. *McCarthy* v. *Howell*, 24 Ill. 343; *Massey* v. *Belford*, 68 id. 390; *Bank* v. *Insurance Co.* 95 U. S. 678.

If the contract is capable of the construction for which the complainant contends in respect to the question of good will, it is void, as being in restraint of trade and contrary to public policy, because it must amount to stipulation on the part of complainant not to engage in said business without limit as to time or territory. *Frazer* v. *Lubricating Co.* 18 Ill. App. 450; *Linn* v. *Sigsbee*, 67 Ill. 75.

Until the complainant's claim was adjudicated and the amount of its demand settled it was not entitled to interest. *Martin* v. *Stubbings*, 20 Ill. App. 331; *Burns* v. *Nottingham*, 60 Ill. 531; *Telford* v. *Telford*, 44 Wis. 547; *Clark* v. *Dutton*, 69 Ill. 521.

It was, in fact, an unliquidated account, the amount of which was not fixed by the contract. *Coughlin* v. *Gutta Percha Manf. Co.* 33 Ill. App. 71; *Bassett* v. *Noble*, 15 id. 360; *Brownell* v. *Steere*, 128 Ill. 209; *Alcohol Works* v. *Sheer*, 104 id. 588; *Sammis* v. *Clark*, 13 id. 544; *Hitt* v. *Allen*, 13 id. 592; *Clement* v. *McConnell*, 14 id. 154.

T. H. Simmons, for appellee.

Mr. Justice Baker delivered the opinion of the court:

Complaint is made by appellant that at the hearing had at the time of the entry of the interlocutory decree the court received incompetent testimony, the tendency of which was to put a construction upon the contract that is inconsistent with its terms. We deem it immaterial to

inquire whether this is so or not, for the rule is, that on the hearing of a bill in equity the court will consider only such evidence as is competent, and that the admission of incompetent testimony at the hearing is no cause for reversal, provided the competent evidence in the record sustains the decree. (*Kingman* v. *Higgins*, 100 Ill. 319; *Mix* v. *People*, 116 id. 265.) It is, however, settled law that a court will construe a contract in the light of the circumstances surrounding the parties at the time of its execution, and of the objects that they evidently had in view. *Robinson* v. *Stow*, 39 Ill. 568; *Chicago, Madison and Northern Railroad Co.* v. *National Elevator and Dock Co.* 153 id. 70.

It is claimed that it was error for the courts below to hold, that by the terms of the contract appellant was required to account to appellee, not only for the sales of patented articles and devices, but also for the sales of articles and devices not patented which appellant manufactured and sold after the date of the agreement, and which were substantially the same articles and devices that appellee had manufactured and sold prior to that date. It is recited in the preamble of the contract, that appellee, party of the first part, is the owner of certain designated patents and also of a certain application for letters patent, and is engaged "in the manufacture and sale of the articles covered by the above mentioned letters patent and application, *and other articles of office and bank furniture.*" It is then therein next recited, that appellant, party of the second part, "desires to acquire the exclusive right to manufacture and sell *all the articles now manufactured and sold by the party of the first part.*" It is perfectly plain from these recitals that the articles manufactured and sold by the first party included "other articles of office and bank furniture" besides those covered by the patents and the application, and that appellant wanted to obtain the right to make and sell the articles not under the patents and application as well as those

that were covered by them.   Then follow the covenants and grants made by the party of the first part: "The said party of the first part hereby agrees to transfer and convey, and does by these presents hereby transfer and convey, to the said second party and its successors and assigns, the good-will and all the business hereinbefore mentioned, together with the sole and exclusive right and license to manufacture, and to grant to others the right to manufacture, all the articles covered by the above said letters patent and said application, and to sell and grant to others the right to sell said articles now owned or controlled by the said first party, together with any and all patents which may be obtained for improvement on same, or for office devices of a like character which may be intended to supersede the articles now being manufactured.   It is also further agreed that should any of the present members of the party of the first part contrive, invent or produce any new article or articles of manufacture during the life of this contract, it or they shall be submitted to the party of the second part for purchase or manufacture on a royalty basis, and the said party of the second part shall have the option of accepting such inventions or product at the same price which may be offered for the same by any disinterested party. It is also stipulated and agreed that the title to said letters patent and application above mentioned will be maintained and protected by the party of the first part."

"All the business hereinbefore mentioned" is transferred and conveyed to the second party, and "all the business hereinbefore mentioned" is stated in the first preamble to be "the manufacture and sale of the articles covered by the above mentioned letters patent and applications, and other articles of office and bank furniture;" and it is stated in the second preamble to be the manufacture and sale of "all the articles now manufactured and sold by the party of the first part."   And the expression "all the business hereinbefore mentioned," can no

more be limited to the articles covered by the patents and application, than it can be limited to the other articles of office and bank furniture manufactured and sold by the party of the first part.   The contract expressly conveys "the good will" in connection with "the business herein-before mentioned."   Good will connected with any trade or occupation is a valuable property right, and is the subject of barter and sale.   (8 Am. & Eng. Ency. of Law, p. 1370, and authorities cited in note 9.)   And here it was sold and conveyed as an adjunct of the business of manufacturing and selling the articles of office and bank furniture that were not patented as well as those that were.   The agreement also conveys to the said second party certain rights, licenses and privileges in respect to the patents and the application for a patent.   And in connection with these transfers of property rights, the second party, appellant herein, agrees to pay to the first party, at the end of one year, "a sum equal to ten per cent of the net aggregate sales *of the line of goods above mentioned,* hereafter sold by the party of the second part, their licensees, agent or agents," and a like percentage, annually, up to the time of the expiration of all the patents mentioned,—the percentage for the first and second years being limited not to exceed $1000 for each year, for the third year not to exceed $2000, for the fourth year not to exceed $3000, and for the fifth and each subsequent year not to exceed $4000.   The percentage is thus based on "the net aggregate sales of the line of goods above mentioned."   The only line of goods that had been mentioned in the agreement was that class of articles of office and bank furniture that appellee was dealing in, whether covered by a patent or not.   It must be presumed that if it had been the intention of the parties to confine the percentage to either patented articles or to certain specific articles, then some such expression as "patented articles" would have been used in the contract or particular articles would have been specified therein.   And in the latter

part of the agreement, where an option is given to the second party to terminate and end the rights of the first party, under the contract, by paying to it the sum of $20,000, the language employed is, "all the right, title and interest of the said first party in and to the business above mentioned, and all its letters patent and applications for patents." If appellee had no right and interest, after the date of the contract, in any of the articles to be sold other than those to be patented, then why say "the business above mentioned," and thereby use language which can refer only to either a description which includes articles of office and bank furniture other than those patented, or to all the articles manufactured and sold by the first party at the time of the agreement?

The circumstances of the case and of the parties indicate quite strongly that the view thus taken of the contract is in accord with what was the intention of the parties. Appellee had an established business of a peculiar kind, which it had built up and from which it was realizing an annual profit of $3000. For the year ending at the date of the contract about $2943 of this profit was made by the manufacture and sale of articles not patented, and only $19 from the manufacture and sale of articles upon which it had patents. It is wholly unreasonable to suppose that it would sell and dispose of a business that was paying it a profit of $3000 per annum for so insignificant a consideration as a yearly commission, percentage or royalty of $19. On the other hand, it is not unreasonable that appellant should be willing to pay a royalty of $1000 a year for an established business that would net it an annual profit of $2000 over and above such royalty,—and more especially so when appellant was already engaged in a line of business with which the business of appellee could conveniently and profitably be joined. At the time of the execution of the contract now in litigation, appellee also sold and transferred to appellant its tools, material and stock on hand for

$3000, and immediately upon its execution both the presi-dent and the secretary of the Sherwood Letter File Com-pany became employees of the A. B. Dick Company, for the purpose of enabling the latter to get fairly started in the business. The former company also turned over to the latter a complete list of its customers, and a circular was sent to each of such customers, as well as those of the Dick Company. The sales made by appellant in the class of business transferred to it by appellee much more than doubled in four years, and the business paid, and still pays, a net profit of twenty per cent upon the amount of the sales, even after deducting the ten per cent as a royalty for appellee.

Appellee introduced in evidence a printed and illus-trated catalogue of articles it was manufacturing and selling at the time the contract was entered into. By doing so it did not necessarily limit the accounting to the identical articles described in said catalogue. The record affirmatively shows that it was offered in evidence for the purpose of showing the kinds or classes of articles or goods that appellee dealt in.

The stipulation of July 7, 1892, did not exclude the "Rival Cabinet Letter File" from the accounting. A stip-ulation of counsel that certain specified articles "are cov-ered by" the interlocutory decree, and that under it the complainant is entitled to an accounting on the same, does not, by implication, exclude from the accounting a letter file that is not mentioned in the list so specified. The stipulation does not state that the articles enumer-ated "are the articles covered" by the decree. Besides this, the two following paragraphs of the stipulation show that it was regarded by counsel to be a question for the decision of the master whether or not the sales of the Rival Cabinet Letter File were to be included in the accounting. In fact, that is the principal point of con-tention between the parties in this litigation. The chan-cellor, in referring the cause to the master to take the

account, expressly directed that the sales to be accounted for should include the sales of all articles substantially like the articles belonging to the business sold, and that a change in the name of any article did not relieve the defendant from accounting for the sales of it, provided such article was used for the same purpose. In our opinion this direction of the chancellor is in accord with the true intent and meaning of the agreement that the parties entered into, and leads to a just and equitable result. We have examined the evidence, and are satisfied therefrom that the Rival Cabinet Letter File is substantially the same as the Sherwood Letter File Cabinet. There are, of course, differences between the two cabinets, and it was probably intended and planned that there should be. We deem it unnecessary to discuss the details of the construction of these two cabinets, or to enter upon an analysis of the expert and other testimony in regard thereto, since no good or useful purpose would be accomplished by so doing.

We think that the "Rival Solid Arch File" stands upon the same footing. It is substantially like the Sherwood Arch File, is adapted to the same uses, and a mere substitute therefor.

One of the preambles to the contract reads as follows : "Whereas, the said A. B. Dick Company desires to acquire the exclusive right to manufacture and sell all the articles now manufactured and sold by the party of the first part in and throughout the United States and Territories." It is urged by appellant that in view of this language in the preamble the Appellate Court erred in directing that an account should be taken of sales in foreign countries. But when we examine the body of the contract, and ascertain just what the parties really did and agreed to do, we find that appellee transferred and conveyed the good will and the business and the sole and exclusive right and license to manufacture and sell under the patents, and that in consideration thereof appellant agreed to pay,

157—22

annually, a sum equal to ten per cent of the net aggregate sales of the line of goods above mentioned thereafter sold by the second party, their licensees, agent or agents. Neither the grant nor the promise to pay the consideration are here limited to the business done in the United States and its Territories. The grant is in general terms, and the good will and the business are subjects of the grant, and the promise to pay is an absolute promise to pay the percentage, not to exceed specified amounts, on the net aggregate sales. It seems that these more important parts of the contract,—the very promises that each party made to the other,—should be given prevailing force and effect in the interpretation of the agreement, rather than a matter that is stated by mere way of recital in a preamble. On the whole, we are inclined to the opinion that the percentage upon foreign sales, made at the agencies in London, Paris and other European cities, should be taken into the account.

It is claimed that it was error to allow interest upon the amounts found due appellee, because there is no provision in the contract for the payment of interest, and the damages are uncertain and unliquidated. The statute (Rev. Stat. chap. 74, sec. 2,) provides that creditors shall be allowed to receive interest on all moneys after they become due on any bond, bill, promissory note or other instrument of writing. *Heissler* v. *Stose*, 131 Ill. 393, and *Scroggs* v. *Cunningham*, 81 id. 110, are directly in point, and are authorities for holding that interest can be recovered even where the amount due is not stated in the writing and is undetermined.

For the reasons herein stated, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE CRAIG, dissenting.