## John J. Murray v. J. M. Doud & Co.

63   247
68   645
69   592
63   247
167s 368

1. CONTRACTS—*By Brokers—Bought and Sold Notes.*—A contract made through a broker, commonly known as a bought and sold note, is one recognized by the law and regarded by the courts as the parties intend it.

2. SAME—*Unaccepted Proposition to Alter.*—A proposition by one party to a contract to make a change in it is ineffectual to alter it unless accepted by the other party.

3. PRACTICE—*Effect of Pleas Not Verified.*—In a suit upon a written instrument where there is no plea verified as required by law denying its execution, such instrument must be taken as stating the contract between the parties.

4. INTEREST—*On Damages Sustained.*—It is not error to instruct the jury in an action for damages, sustained by reason of a breach of contract, that the plaintiff is entitled to interest on whatever damages he has sustained.

Assumpsit, for breach of contract. Appeal from the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed March 31, 1896.

RUFUS KING and ALLAN C. STORY, attorneys for appellant.

A broker is thus defined by the ordinance of Chicago : "A produce broker is one who, for commission, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce, or grain belonging to others." (Ordinances of Chicago, Sec. 1500.)

Benjamin on Sales thus describes them : Sec. 310. "There is a class of persons who make it their business to act as agents for others in the purchase and sale of goods, known to the common law as brokers."

Under the above ordinance, there can be no lawful "broker," except as to "goods" or other property actually in existence; the property to be sold must "belong to other persons." Unless in existence it is absurd to call it property, or to speak of ownership. Coddington v. Goddard, 82 Mass. (16 Gray) 434; Davis v. Shields, 26 Wend. (N. Y.) 341; McMullen v. Hellberg, L. R., 4 Ir. 94; Moore v. Campbell, 10 Exch. 323; Langdell, Cas. on Sales, 465, 568, 614.

The authority of the broker must be from each to sign the identical contract. Without authority from both, the contract is not the mutual obligation of each and is void. Cummings v. Roebuck, 1 Holt, 172; Thornton v. Kenser, 5 Taunt. 785; Peltice v. Collins, 3 Wend. (N. Y.) 459; Davis v. Shields, 26 Wend. (N. Y.) 349–350.

An action founded upon a transaction prohibited by a statute can not be maintained. Seidenbender v. Charles, Adm., 48 S. & R. 150; Neustadt v. Hall, 58 Ill. 172; Craiga v. Missouri, 4 Pet. 410; Nash v. Monheimer, 2 Ill. 215; Lewis v. Headly, 36 Ill. 433.

Things forbidden by law are legal impossibilities. Anson on Contracts, 144; 2 Parsons on Contracts, 186; Bush on Contracts, 458.

It has been repeatedly held that persons acting in capacities prohibited by law, without a license, can not recover compensation for such services. Heth v. Green, 73 Pa. St. 198; Stanwood v. Woodward, 38 Me. 192; Stevenson v. Ewing, 3 Pick. (87 Tenn.) 46; Heustis v. Pickards, 27 Ill. App. 270; Sawyer v. Werterberg, 9 N. Y. Micl. 210; Braun v. Chicago, 110 Ill. 186; Chicago v. Honey, 10 Ill. App. 540; Distilling Co. v. Chicago, 112 Ill. 19.

Unless both parties to a contract are bound, so that an action can be maintained by either against the other in case of a breach, it is not a contract, and neither is bound by it. Stiles v. McClelland, Colo. 89; Townsend v. Fisher, 2 Hilton 47; Quick v. Wheeler, 78 N. Y. 300; Ervine v. Gerdon, 49 N. H. 444; McKinley v. Watkins, 13 Ill. 140; Jenkins v. Williams, 16 Gray 158; Richardson v. Hardwick, 106 U. S. 252; McDonald v. Bewick et al., 51 Mich. 79; Ingle v. Tronette, 120 N. Y. 21; Chicago & A. R. R. v. Jones, 53 Ill. App. 434; Cutting Packing Co. v. Packers' Exchange, 86 Cal. 574; Angus v. Watson, 51 Calif. 620; Butt v. Ellett, 19 Wall. 545; Olney, Adm., v. Howe, 89 Ill. 156; 1 Addison on Contr. (Morgan's Ed.), p. 34, Sec. 18; Schnell v. Turner, 130 Ill. 28; Tucker v. Wood, 12 Johns. (N. Y.) 190; Nelson v. Haynes, 66 Ill. 490; Olney, Admr., v. Howe, 89 Ill. 560; Rofalovitz v. Am. Tob. Co., 28 N. Y. 274; 73 N. Y. 87.

If one sells what he has not now, and has made no contract for purchasing, or which is not then in existence, but intends to go into the market and buy, he can not enforce the contract. 1 Parsons on Contracts, 524; Low v. Pew, 10 Mass. 347; Bryan v. Lewis Ry. & M., 386; Loynes v. Smith, 1 B. & C. 1, 2 Dow & Ry. 23; Head v. Goodwin, 37 Me. 187; Stanton v. Small, 3 Sandf. (N. Y.) 230; Noyes v. Jenkins, 55 Ga. 586; Redd v. Burns, 58 Geo. 574; Brown v. Combs, 63 N. Y. 597; Hutchinson v. Ford, 5 Bush (Ky.) 318; Gittings v. Nelson, 86 Ill. 309; Stengard v. Smith, 43 Minn. 11; Wilkins v. Heavenritch, 58 Mich. 574; C. & E. R. R. Co. v. Dane, 43 N. Y. 240; Hurd v. Gill, 45 N. Y. 341.

There must be a tender and subsequent sale at market price before buyer can be made liable for goods bargained and sold. 2 Benjamin on Sales, 734 (Kerr's note).

The proper measure of damages is the difference between contract price and market price at time of breach. Benjamin on Sales, 735; Foos v. Sabin, 84 Ill. 565; Bagley v. Finlay, 82 Ill. 524; Sanford v. Benedict, 78 Ill. 309; Chicago v. Greer, 76 U. S. 726.

PECK, MILLER & STARR, attorneys for appellees, contended that an executory agreement to sell goods which are not yet in existence, or which the contracting party has not yet acquired, is valid as an executory agreement. " In relation to things not yet in existence, or not yet belonging to the grantor, the law considers them as divided into two classes, one of which may be sold, while the other can only be the subject of an agreement to sell, or executory contract." Benjamin on Sales, Sec. 78; Story on Sales, Sec. 186. The contract is valid, although the party agreeing to sell has no title at the time; Logan v. Musick, 81 Ill. 315; Wolcott v. Heath, 78 Ill. 433; Sanborn v. Benedict, 78 Ill. 309; Clarke v. Foss, 7 Biss. 552; Atkinson v. Bell, 10 B. & C. 277.

A contract in writing to be complete need not show mutuality on its face. Plumb v. Campbell, 129 Ill. 106; Jugla v. Trouttett, 120 N. Y. 27.

A promise lacking mutuality at its inception becomes

binding when the other party, within a reasonable time, engages to perform the contract on his part, by his beginning such performance in a way which would bind him to complete it, and by mutual performance. Plumb v. Campbell, 129 Ill. 109.

The contract does not lack mutuality. It imposes the reciprocal duties on Doud to produce and Murray to receive. Consolidated Iron Works v. Moore & Co., 78 Ill. 65; National Furnace Co. v. Keystone Mfg. Co., 110 Ill. 427; Brown v. Rounsavell, 78 Ill. 589; Central Shade Roller Co. v. Cushman, 143 Mass. 353; Van Morten v. Babcock, 23 Barb. 623; Lake Shore & M. S. Ry. Co. v. Richards, 126 Ill. 448; Hibblewhite v. McMorine, 6 Mees. & Welsb. 462; Mortimer v. McCallan, 5 Mees. & Welsb. 70, 76; Brewer v. Michigan Salt Assn., 47 Mich. 526.

Where the agreement is for the sale of goods to be manufactured, the same rule applies as in the case of the sale of unspecified chattels; the contract is executory until the manufacture is completed and goods selected, separated and made ready for delivery. 21 Am. & Enc. L., 502.

The business of a factor and a broker are in many respects unlike, and in some similar. They are both agents of the owner to sell property. A broker is an agent employed to make bargains and contracts between other persons in matters of trade, for a compensation commonly called brokerage, or, in the language of Lord Chief Justice Tindal, " A broker is one who makes a bargain for another and receives a commission for so doing." He is a mere negotiator between other parties, and never acts in his own name, but in the name of those who employ him. When he is employed to buy or sell goods, he is not intrusted with the custody or possession of them, and is not authorized to sell them in his own name. He is a middleman, and for some purposes is treated as the agent of both parties. Where he is employed to buy and to sell goods, it is the custom to give to the buyer a note of the sale, called a sold note, and to the seller a like note, called a bought note, in his own name, as agent of each, whereby they are respectively bound, if he has not

exceeded his authority. Saladin v. Mitchell, 45 Ill. 79; see also Memory v. Neipert, 35 Ill. App. 12; 131 Ill. 623.

That the broker had no license will not avoid the contract between the principals. 16 Lawyer's Report Annotated 425; Pidgeon v. Burslem, 3 Exch. 465; Jessopp v. Lutwyche, 10 Exch. 614; Smith v. Lindo, 4 C. B. N. S. 395.

The broker can recover, although he has no license. Pope v. Beals, 108 Mass. 561; Angell v. Van Schaick, 56 Hun 247; Buckman v. Beagholz, 37 N. J. L. 437; Shepler v. Scott, 85 Pa. St. 329; Chadwick v. Collins, 26 Pa. St. 138; Prince v. Eighth Baptist Church, 22 Mo. App. 352; Johnson v. Hudson, Story's Comp. Laws 748; Lindsay v. Rutherford, 17 B. Mon. (Ky.) 245; Bull v. Harragan, 17 B. Mon. (Ky.) 349.

The acts of a *de facto* agent or officer are binding between the principals, although he has no real title to the office or position through which he acts. Sharp v. Thompson, 100 Ill. 447; Coles County v. Allison, 23 Ill. 437; 5 Am. & Eng. Encyc. of Law, 96.

The same rule applies to *de facto* officers of private corporations, and other persons in private relations, as between third persons. 5 Am. & Eng. Encyc. of Law, 94, citing Bank of U. S. v. Dandridge, 12 Wheat. (U. S.) 64, at 70; Atlas Nat. Bank v. Gardner, 8 Bissell 537; Despatch Line v. Bellamy, 12 N. H. 223.

Mr. Presiding Justice Gary delivered the opinion of the Court.

The relations between these parties began by a bought note delivered to the appellant, and a sold note delivered to the appellees, by "a broker in beef and pork goods," as follows:

"Chicago, Nov. 3, 1891.

Bought of J. M. Doud & Co., Boone, Iowa.

Care of Lamson Bros., Board of Trade Bldg., Chicago:

Their entire production leaf, from date to January 1, 1892, at nine cents, Chicago delivery. You are to receive the leaf f. o. b. teams at any city depot or at any warehouse at Union Stock Yards, in such lots as they may ship. In

the event that either party should become incapacitated in manufacturing by destruction of premises by fire, the sale to become null and void at such date. Goods to be in prime condition on arrival in Chicago. Terms, cash.

L. M. PRENTISS.
To J. J. Murray & Co., Chicago."

"CHICAGO, Nov. 3, 1891.

Sold J. J. Murray & Co., your entire production of leaf lard from date to January 1, 1892, at nine cents, Chicago delivery. They are to take this leaf f. o. b. teams at any city depot, or at any warehouse at the Union Stock Yards, in such lots as you may ship. They would like, however, that you ship in lots about 5,000 pounds, when convenient to do so. In the event that either party should become incapacitated in manufacturing by destruction of premises by fire, the sale to become null and void at such date. Goods to be in prime condition for butterine purposes on arrival in Chicago. Always notify me as shipments start and where consigned, with car number. Terms cash.

L. M. PRENTISS.
To J. M. Doud & Co., Boone, Iowa.
Care Lamson Bros., Chicago."

A moderate acquaintance with the ways of business enables us to know that by such documents contracts of sale are made, which the law regards as the parties intend them. Benjamin on Sales, Sec. 273 *et seq.*; Memsey v. Niepert, 131 Ill. 623, and cases there cited; S. C., 33 Ill. App. 131,

As the abstract shows no verification of any plea denying the execution of those instruments, copies of which were filed with the declaration, there can be here no question that they are truly the contract between the parties. Sec. 34 Practice Act; Wabash R. R. v. Smith, 58 Ill. App. 419.

The market price of lard declined during the time covered by the contract, and this suit is brought by the appellees to recover damages which they allege they sustained by the refusal of the appellant to take and pay for some of the lard.

A part of the contest was as to a little over twelve thousand pounds of lard " produced " by the appellees in December, 1891, and arriving in Chicago January 1 and 5, 1892. The contract is silent as to time of delivery, and therefore the delivery was to be in a reasonable time after production, which might be later than any date mentioned in the contract. The appellant, however, relies upon a letter as a practical construction or rescission *pro tanto* of the contract, or as an estoppel—as follows:

" Lamson Bros. & Co., Commission,

    No. 6 Board of Trade,

                           Chicago, Dec. 31, 1891.

Messrs. J. J. Murray & Co., 109 Fulton Street.

Gentlemen : With to-day's car our contract for leaf lard expires. Dec. 14th you rejected 7,570 lbs., which we have Board of Trade certificate declaring to be good and sweet. Dec. 18th you rejected 4,100 lbs., which we sold to Friedman & Swift—total 11,670 lbs.—and they will certify that it was first-class.

Now, we wish to propose to you to ship you the amount, 11,670 lbs. next month, at the old price, 9c., and settle our differences this way and continue to let you have our lard at market price afterward. If you accept this proposition please let us know. We predict small run of hogs next three months and higher prices.

                     Yours truly,

                       J. M. Doud & Co."

The appellant did nothing in consequence of that letter—in no way changed his position; and the letter was followed by another, as follows :

" Lamson Bros. & Co., Commission,

    No. 6 Board of Trade,

                     Chicago, January 2, 1892.

Messrs. J. J. Murray & Co., 109 Fulton Street.

Gentlemen : When we wrote you the other day—December 31—that the car at the Union Stock Yards completed the contract, the writer did not have your contract before him, but since referring to it we find that you are to take

our entire production during November and December, and no time stated for delivery. We killed 923 hogs Thursday, December 31, and the lard will be in by the first of the week. Mr. Prentiss informs us that you decline to take this lot or the one to come, so we have ordered both lots sold for your account and will render you a bill for difference accordingly, and insist upon payment for not only this but all other differences since the contract was made.

Yours truly,<br>J. M. Doud & Co."

The appellees were entitled to whatever the contract, and the acts done under it, entitled them to, without regard to those letters.

All the questions of fact upon which the rights of the parties depended, were settled, upon conflicting testimony, by answers made by the jury to special interrogatories prepared by the appellant.

The appellant asked twenty instructions, of which the court gave a dozen, and we will add only that he got to the jury all the law that he had any right to, and a little more.

The attorneys seem to have had a boisterous time before the jury, but it does not appear that the attorney of the appellee got the advantage in the scramble, and we suspect that he could not have done so. Cartier v. Troy Lumber Co., 35 Ill. App. 449; Lake Erie & W. R. R. v. Middleton, 142 Ill. 550.

The court instructed the jury that the appellee was entitled to interest on whatever damages he sustained. Cases, even in this State, conflict upon that question.

The instruction is in accord with Driggers v. Bell, 94 Ill. 223, and Dick v. Sherwood, 51 Ill. App. 343, 157 Ill. 325.

There is no error, and the judgment is affirmed.

This disposition of the case makes it unnecessary to pass upon the motion to strike out the bill of exceptions.