# Jehu H. Randolph v. Drew Inman.

1. INTEREST—*Allowance of on Settlement of Partnership Accounts.*— The general rule is that interest is not allowable on the settlement of partnership accounts, and the exception is where there has been an unreasonable delay in making settlement or improper use·of the partnership funds by the partner sought to be charged.

2. PARTNERSHIP—*Finding as to Certain Articles on an Accounting Sustained.*—In a suit for the settlement of a partnership the original price of certain furniture and fixtures was shown, but there was no evidence of their value at the time the partnership was dissolved or the testimony taken, or that the defendant in whose possession they were left had ever used them wrongfully. Nineteen years elapsed after the articles were purchased before the master's report and final decree. *Held* that it might reasonably be inferred that the articles were of no value, or if of any, that it would be inequitable under the circumstances to charge it to the defendant.

3. COSTS—*In Chancery Proceedings are in the Discretion of the Chancellor.*—The apportionment of costs in a suit in equity is a matter within the discretion of the chancellor, and in this case, considering the fact that the litigation was caused by the fault of the appellant, and that he failed to a large extent as to his claim, the court is not prepared to say that the order in regard to costs was an abuse of that discretion.

Bill, to settle a partnership. Error to the Circuit Court of De Witt County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

MOORE, WARNER & LEMON, attorneys for plaintiff in error.

GEORGE K. INGHAM, attorney for defendant in error.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

The parties, with one Milmine, were copartners in a general country store, under the firm name of Milmine & Inman, at Kenney, in the county of DeWitt, from March 1, 1877, to February 28, 1878, when Milmine withdrew, and on March 1, 1878, a copartnership between Randolph & Inman was formed and continued the business until March 4, 1879, when it was dissolved.

On August 12, 1887, the plaintiff in. error filed the bill herein to dissolve a partnership alleged to be then existing and to settle the matters between these parties arising out of it.

· The answer denied the existence of any such partnership since March, 1879, and set up the statute of limitations as a bar to the relief asked. Complainant, by amendment to the bill, alleged that defendant had, within five years before it was filed, promised to settle up all partnership business between them done before March 4, 1879, and pay whatever balance should be found against him on such settlement. On the hearing the Circuit Court found against the complainant on that issue and dismissed the bill; but this court on November 23, 1889, reversed that decree and remanded the cause with direction " to proceed to an adjustment and settlement of the rights of the parties in reference to the partnership relations which terminated on the 4th of March, A. D. 1879." 32 Ill. App. 246.

It was thereupon referred to the master to take and report the proofs and state the account. He employed an expert to assist him in stating the account, took the proofs and made his report on October 9, 1895, and on final hearing, upon exceptions thereto, a decree was made on the next following day, finding due to the complainant a balance of $3,112.85; but he is not satisfied with that amount and has brought the record here upon a writ of error.

It contains 546 pages, and the abstract 153. But counsel excuse us from an examination of such a mass of matter, so complicated, because the assignments of error challenge the rulings only as to two or three items, said to be sufficiently treated in their argument.

The first is the refusal to allow to complainant interest on the balance found due to him.

In Brownell v. Steere, 128 Ill. 209, the Supreme Court said : " The Circuit Court disallowed a charge against appellant for interest and appellee assigns such disallowance as cross-error. We do not think there has been any such delay in accounting or any such improper use of part-

nership funds as to entitle appellee to charge appellant with interest." This states the rule as it appears to be held in Illinois—that interest is not allowable on the settlement of partnership accounts, and the exception is where there has been unreasonable delay in such settlement or improper use of the partnership funds by the partner sought to be charged. Scroggs v. Cunningham, 81 Ill. 110; Robbins v. Laswell, 58 Id. 203. Nor do we understand that the Massachusetts cases cited—Dunlap v. Watson, 124 Mass. 305, and Crabtree v. Randall, 133 Id. 552—materially differ. The fact that the assets of a firm in charge of a partner to wind up its affairs are in the nature of trust property may affect the application of the statute of limitations, and of the rule that interest is not ordinarily to be paid on an unliquidated debt except from the time of action brought, but on what principle should he ever be charged with it unless for his wrong in improperly using or neglecting to account for the trust fund?

In this case the court below found there had been no such wrong on the part of the defendant, and the evidence seems fairly sufficient to warrant it. This was a question of fact.

The next assignment of error insisted on is that the court did not charge the defendant with the value of certain fixtures or furniture—stove, pipe, show cases, lamps and chandeliers—belonging to the firm and used in its store. All that we find in the record respecting them is from the testimony of the defendant, taken August 18, 1890—more than thirteen years after the partnership was formed, and over eleven after it was dissolved. He stated that their original price was $602.89, but there was no evidence of their value at the time of the dissolution or at the time he testified. About a year after the dissolution he removed his stock from Kenney to Clinton. Whether he then so removed these articles does not appear. His statement is that he was not still using any of them in his private business, and that to take care of them he had put them in the cellar. How long since he had ceased to use them the

evidence does not disclose. Nor does it show that he ever used them wrongfully as against the plaintiff in error. He was authorized to continue to use them after the dissolution in closing up the affairs of the firm. He says the understanding was that when the jobber creditors should all be paid in full they would settle as between themselves; that from collections made he got them all paid within a little more than a year, and then promptly advised complainant by letter of May 21, 1880, of that fact and of his readiness to settle. The record contains half a dozen similar letters from him, inviting and urging a meeting for settlement, and running down to 1887. The failure to make it amicably clearly seems to have been the fault of complainant. Nearly nineteen years elapsed after these articles began to be used before the master's report and the final decree, promptly following it, were made. It is therefore not strange that neither the master nor the chancellor took them into account —reasonably inferring or assuming that they were of no value, and if of any, that it would not be equitable under the circumstances to charge it to the defendant.

By the master's report the amount found due to complainant was $5,580.05, which was reduced by the court to $3,112.85. This reduction was caused in part by deducting from the invoice of the firm stock the sum of $824.68 for goods taken by Charles C. Randolph, a son of complainant, who succeeded him in the firm on March 4, 1879, but in June following withdrew his stock and removed to Wellington, Kansas. And this deduction, it is said, was error.

It is conceded that complainant gave or sold to Charles a $3,000 interest in the stock, and that this amount was properly deducted from the invoice as between complainant and defendant. But it appears that when Charles went to Wellington, he withdrew not only $3,000 worth of the stock, but as Inman claimed and is not disputed, $824.69 in value thereof besides; and that to entitle him to do so, his father assumed a firm debt of the parties hereto to the bank of John Warner & Co., of $904.30, for which he took his son's note and paid the bank debt. The court deducted from the invoice the sum of $3,824.68.

Now, it is claimed that although $3,000 was properly deducted, because that amount was actually withdrawn from the stock of J. H. Randolph and Drew Inman and not paid for to that firm, the further deduction of $824.68 was improper, because though that additional amount of stock was also actually withdrawn, it was paid for in effect to the firm by J. H. Randolph.

We fail to understand why the fact that the firm received payment for the one and not for the other of these amounts, should have the effect so claimed, upon the statement of the invoice of stock, whatever it might have upon the other items in the statement of the whole account between these parties. So much of the amount, as invoiced, was in fact so disposed of as to assume a different form of debit and credit as between them. It was no longer in goods of the firm, and therefore was not properly so invoiced. If Randolph disposed of $3,000 worth of it and did not pay it to the firm, he should have been charged with the whole amount as due to the firm for goods so disposed of, and credited by the firm with his interest in them as a member of it. If he also disposed of other goods, amounting to $824.68, and paid that amount for the firm, he should have been charged for the goods and credited for the payment, leaving no balance either way; but neither amount should have been invoiced as existing goods of the firm. They were alike just as much out of its stock as if they had been destroyed by fire. We think the deduction was proper. Whether the amount was or was not otherwise taken into the account, we are not advised by counsel. Our conclusion on this point is based upon their own statement of the facts and quotations from the testimony of the parties.

The last ground of complaint is that the decree charged the costs to complainant equally with the defendant. This was a matter within the judicial discretion of the chancellor. Considering that the litigation was caused by the fault of complainant, and that he failed to so large an extent as to his claim, we are not prepared to say that the order on this point was an abuse of that discretion. The decree will be affirmed.